## JOHN SANDERSON *vs.* JAMES STOCKDALE, et al.

A promise to execute a mortgage to secure a debt, without designating or describing the property to be mortgaged, and not even stating whether it was to be real or personal estate, is too vague and indefinite to be enforced by a court of equity.

Partnership creditors, before judgments obtained, have *no lien* on the partnership effects for the payment of their debts, but the partners themselves

Sanderson *vs.* Stockdale, *et al.*

have such lien for the discharge of all the partnership debts, and this lien of the partners may, in many cases, be made available for the benefit of creditors.

Partnership effects may be legally transferred, *bona fide,* for a valuable consideration, either to one or more of *the partners,* or to mere strangers, but when the transfers are *fraudulent,* they cannot impair or injuriously affect the claims of partnership creditors.

Under the 2nd section of the act of 1835, ch. 380, a partnership creditor may, *without first obtaining judgment on his claim,* proceed in equity to vacate *any* transfer, assignment or contract between the partners disposing of partnership effects among themselves, for fraudulent purposes.

Under this act, "*any creditor or creditors, plaintiff or plaintiffs,*" may, without first obtaining judgment on his claim, proceed in equity to vacate "*any conveyance, or contract, or other act,* as fraudulent against creditors."

A bill filed by a partnership creditor, charged that the partnership effects had been misapplied and appropriated to the private purposes of the individual partners, by which the creditors of the firm have been delayed, hindered and defrauded; that the firm is insolvent, and that a dissolution, or pretended dissolution, thereof, and transfer or assignment of the partnership effects were designed, to effectuate the dishonest purpose of defeating creditors, and appropriating such effects to the private purposes of the partners, and that unless they are arrested in the prosecution of this purpose, the complainant will sustain great and irreparable injury. Upon appeal from an *order refusing to grant an injunction* and appoint a receiver on this bill, HELD:

1st. That as the case *now stands,* the complainant is entitled to have the assignment considered fraudulent and void, and, therefore, should have an *injunction* to prevent the *partnership effects* from being sold or disposed of in any manner prejudicial to his claim, until his rights can be ascertained and settled in the future progress of the case.

2nd. Such injunction should embrace all the effects included in the alleged fraudulent transfer or disposition, and which are to be found in the possession or under the control of either or any of the partners, and also any other effects still belonging to the firm, or which may be in the possession or under the control of either or any of the partners, by virtue of any conveyance, or contract, or any other act, not *bona fide.*

3rd. But he is not entitled to an injunction to prevent a disposition of the *bona fide separate property* of the partners, and which is not held or claimed by the individual members of the firm, under any fraudulent transfer of property originally owned by the partnership.

4th. After the cause is remanded, it will be proper for the court below, at any time after *reasonable notice* to the defendants, or their solicitor, to appoint a receiver of the effects covered by the injunction, provided it shall be shown to the court that such a measure is necessary to the ultimate security of the complainant.

APPEAL from the Circuit Court for Baltimore city.

This appeal was taken from an order of the court below (KREBS, J.) refusing to grant an injunction and appoint a receiver upon a bill filed by the appellant against the appellees. The allegations of the bill and the purport of the exhibits therewith filed, are fully stated in the opinion of this court.

The cause was argued before ECCLESTON, TUCK and BARTOL, J.

*Wm. S. Bryan* and *Henry Webster* for the appellant, argued:

1st. That under the act of 1835, ch. 380, sec. 2, the appellant has a right to proceed in equity to *vacate the assignment* of the 27th of June 1857, without obtaining a judgment. This law permits a party to proceed in equity "to vacate any *conveyance,* or *contract,* or *other act,* as fraudulent against creditors," without first obtaining a judgment on his claim. It would be a narrow construction of this act to say, it allows a creditor to attack a *deed,* and not a *parol assignment* fraudulent and invalid on its face. The words are comprehensive, embracing any *"contract* or *other act,"* and clearly include just such a case as the present.

2nd. That the bill states a case which would require a court of equity to annul this assignment. The assets of an insolvent partnership are, in equity, primarily applicable to the payment of the partnership debts. The attempt, therefore, on the part of the appellees to defeat this equitable right of the partnership creditors by a pretended assignment, is fraudulent. 1 *H. & G.,* 96, *McCulloh vs. Dashiell.* 2 *Md. Rep.,* 1, *Glenn vs. Gill.* 19 *Vermont,* 279, *Washburn vs. Bank of Bellows Falls.* 1 *Sandford's Ch. Rep.,* 348, *Jackson vs. Cornell.* 4 *Barb.,* 571, 590, 691, *Burton vs. Tisdall.* 2 *Paige,* 400, *Devean vs. Fowler.*

3rd. That a court of equity having acquired jurisdiction of the case, will retain it, for the purpose of doing complete justice. It will, consequently, decree an account of the partnership, and payment of the appellant's claim, primarily out of

the partnership effects, and, failing these, out of the private estate of the partners.    2  *Johns. Cases*, 424, *Armstrong vs. Gilchrist*.    10  *Johns.*, 587, 595, *Rathbone vs. Warren*.    2 *Hill ( S. C.) Ch. Rep.*, 111, *Backler vs. Farrow*.

4th.  That as there is good reason to apprehend that the partnership effects will be misapplied, through the fraud of the appellees, pending this suit, equity will issue an injunction and appoint a receiver.    1st.  The general grounds on which injunctions are issued by courts of equity, are well stated in *Pennell vs. Roy*, 17 *Eng. Law & Eq. Rep.*, 417, and in *2nd Story's Eq.*, sec. 872.    In *Thompson vs. Diffenderfer*, 1 *Md. Ch. Dec.*, 489, the Chancellor said, where "the facts charged in the bill present an aspect of imminent danger, and *contemplated*, if not actual, fraud," there was a judicial necessity for an injunction and a receiver.    It is held that *even a bona fide possessor* of property will be displaced, and a receiver appointed, if there is danger from his insolvency, fraud, or misconduct, that he will make a misapplication of it.    2 *Md. Ch. Dec.*, 157, *Drury vs. Roberts*.    2nd.  The case of *Uhl vs. Dillon*, 10 *Md. Rep.*, 500, is not in conflict with the positions here assumed.    In that case there was nothing on which to ground the jurisdiction of a court of equity, but here the act of 1835 expressly gives the jurisdiction, because we call upon the court to set aside an *executed* transaction as fraudulent and void, and the injunction is asked as auxiliary to the principal relief sought.    3rd.  In *Albert & Wife vs. Winn & Ross*, 7 *Gill*, 446, an injunction was granted to restrain the fraudulent alienation of property.    This was on the ground that whatever equity would undo, it would prevent.    In *Ellicott vs. Insurance Co.*, 7 *Gill*, 308, a similar injunction was granted.    In the case at bar, as in the two last mentioned, the specific fraud contemplated is pointed out.    It is very usual to issue injunctions to prevent the alienation of property *pendente lite*, when there is reason to apprehend a fraudulent disposition of it, as in the ordinary case, where a bill is filed by a wife against her husband for divorce and alimony.    4 *Gill*, 105, *Ricketts vs. Ricketts*.    4th.  The case stated in the court's opinion, in *Kerr vs. Potter*, 6 *Gill*, 425, is the present one.    See, also, 4 *Paige*, 574, *Bloodgood vs. Clark*.    2 *Story's Eq.*, sec. 834.

5th. That as Stockdale's private property is liable to contribute to the payment of the partnership debts in the proportion to be ascertained when the account of the partnership is taken, and as the bill charges that he has in contemplation a fraudulent disposition of it, an injunction should be granted to restrain the alienation of it.

*T. Parkin Scott* for the appellees, argued:

1st. That the promise to give a mortgage, made on the 27th of July 1857, *after* the sale and delivery of the hogs, was and is without consideration, and void.

2nd. That the promises of Stockdale, made in September 1857, to secure or pay the debt by assigning securities, were conditional and voluntary, and are not binding, and, besides, are too vague, indefinite and uncertain to be enforced by a court of equity.

3rd. That a debtor, in failing circumstances, has a right to give preferences. 9 *Gill*, 231, *Powles vs. Dilley.* 3 *Md. Rep.*, 225, *Glenn vs. Grover & McColm.* 7 *Md. Rep.*, 177, *Falconer vs. Clark & Griffith. Act of* 1854, *ch.* 193, *sec.* 13.

4th. That the complainant has *no lien* on any part of the property mentioned in the bill, and, therefore, had no right to attack any disposition which the parties may have made of it.

5th. That the refusal of the court below to grant the injunction or appoint a receiver, was correct, is clearly settled by the case of *Uhl vs. Dillon*, 10 *Md. Rep.*, 500, and the case of *Glenn vs. Gill*, 2 *Md. Rep.*, 16.

ECCLESTON, J., delivered the opinion of this court.

This appeal is taken, by the complainant, from an order of the circuit court for Baltimore city, refusing to grant an injunction and appoint a receiver.

The bill was filed on the 19th day of September 1857, and alleges, that for some time prior to the 27th of June, and up to the 17th of September, in the same year, the defendants had been doing business as partners, in the city of Baltimore, under the name and firm of Ulery, Stockdale & Co., and, as such, became indebted to the complainant in the sum of

$19,695, for hogs sold to them, for which the defendant, James Stockdale, executed and delivered to the complainant three promissory notes, signed in the partnership name, dated the 14th of July 1857, and amounting, in the aggregate, to the above mentioned sum; which notes have not been paid, two of them being over-due and protested before the filing of the bill, and the third falling due a few days after, which note, Stockdale informed the complainant, would not be paid at maturity. That the hogs have been sold by Stockdale, and he has received the money for them, as he has acknowledged.

The bill also alleges, that he promised to procure an endorser for the three notes, as an additional security for their payment, but he has failed and refused to do so; that having failed and refused to comply with that promise, Stockdale promised, in writing, on the 27th of July 1857, to give the complainant notes secured by mortgage, which he has since refused to do. That Ulery, Long and Cope are citizens and residents of the State of Pennsylvania, and out of the reach of the process of the courts of Maryland; that the partnership is unable to meet its just liabilities, and is insolvent; that the notes of the firm have been protested, in the city of Baltimore, for non-payment. The bill also alleges, that the complainant has heard, and believes, that misunderstandings and unfriendly differences have arisen among the members of the partnership, with respect to the partnership property. And the complainant avers, that Stockdale has charged his partners with wrongfully withholding from the partnership property, funds and effects to the amount of forty-five thousand dollars, and carrying the same beyond the limits of this State; that Stockdale has attributed the embarrassed and insolvent condition of the partnership to this conduct of his partners. The bill also states, that on the 17th of September 1857, an advertisement appeared in the Baltimore Sun, a newspaper published in that city, containing a notice of the dissolution of the partnership, signed by all the members of the firm, and stating that the partnership was dissolved on the 27th day of June 1857; that Long and Cope had disposed of all their interest in the partnership to Stockdale, who would liquidate the affairs of the late part-

nership, and further stating that Stockdale and Ulery would continue the business, and pay all the debts of the late firm, and collect all that were due the same; which notice is alleged to be the first ever given to the public of the dissolution of the partnership, which had taken place nearly three months before, according to the advertisement, during all which time the business was conducted in the partnership name.

The complainant also avers, he believes that the partnership effects have been misapplied, and appropriated to the private purposes of the individual partners, and that the creditors of the partnership have been thereby delayed, hindered and defrauded, and he charges that the pretended dissolution and assignment above mentioned, is a fraudulent device, designed still further to effectuate the same dishonest purpose of defeating the just claims of creditors, and misapplying and appropriating the partnership effects to the purposes of the individual partners. And it is averred, that unless Stockdale, Ulery, Long and Cope are arrested in prosecuting their said purpose, and prevented from carrying the same into effect, by the interposition of the court of equity, the complainant will sustain great and irreparable damage. And he alleges that he is informed, and believes, that Stockdale owns a large amount of real estate in the city of Baltimore and Baltimore county, and that the partnership of Ulery, Stockdale & Co., own real estate in the said county, but the complainant is unable to describe the same, and is ignorant of its value. He also avers he has good reason to believe, and does believe, that the real estate belonging to Stockdale, and that belonging to the partnership just mentioned, may be conveyed away and disposed of, so as to be beyond the reach of their creditors, both individual and partnership, unless the court should interpose and prevent such disposition and conveyance. And the bill charges that Ulery, Stockdale, Long and Cope, have such a design in contemplation.

The prayer of the bill is, that the defendants may be restrained, by an injunction, from carrying away, wasting, misapplying and disposing of the partnership funds and effects of the firm of Ulery, Stockdale & Co., or in any wise intermed-

dling with the same, and that a receiver may be appointed to take charge of them under the direction of the court; that the assignment mentioned to have been given, as stated in the advertisement of the 17th of September, may be declared to be null and void; that an account of the partnership of Ulery, Stockdale & Co., may be taken, and a decree passed for the payment of the complainant's claim out of the said partnership effects and estate, and if they shall be found insufficient to pay the same, that the individual partners may be decreed to pay the balance remaining unpaid out of their separate estate, and that Stockdale may be enjoined and prohibited from alienating, selling and conveying away, or in any wise incumbering his personal and real property in the city of Baltimore and Baltimore county, or elsewhere, if he has any, and that he shall discover whether he has any, and that he shall give a description of the same, and a statement of its value, and be decreed to mortgage the same to the complainant, to secure his said debt, or that the same be sold for the payment of the same, or to pay such portion as the said Stockdale may be rightfully chargeable with by the rules of equity and good conscience, or that he may mortgage the same for such portion of the said debt as it may be right he should secure by mortgage; and that the complainant may have such other and further relief as his case may require, and as to right may appertain.

With the bill were filed, as exhibits therein mentioned, copies of the three notes, a copy of the letter alleged to have been written by Stockdale, in which he promised to give a mortgage, and also a copy of the advertisement of the dissolution of partnership.

On the 24th of September 1857, were filed two of said notes, with the protests of them, and the letter from Stockdale, mentioned in the bill, with an affidavit of the complainant, stating those two notes and the letter to be the originals which they purport to be, and that the third note was not then due, but would be due and payable on the 25th of September 1857, and had been deposited in bank for collection.

There was also filed an affidavit of Henry Webster, one of

the complainant's solicitors, dated the 24th of September 1857, stating that on or about the 10th of the same month, the deponent was consulted by the complainant in relation to his claim against the defendants; that subsequently, before the 17th day of the same month, he had several interviews with James Stockdale, one of the defendants, about the same matter; that he said the debt mentioned by the complainant in his bill, and secured by the notes, as therein stated, was *bona fide*, and should be paid, every dollar of it; that the said partnership was about to be dissolved, and he wanted more time to pay it; that he had settled with his partners, to whom he did not owe a dollar, and that they had just withdrawn forty-five thousand dollars out of the firm, which was the cause of its then embarrassment, and inability to pay its debts. Stockdale further stated, that his partners had become dissatisfied with his management of their business; that they could not agree about it, and that the firm would be dissolved on Friday, the 18th day of September 1857, before which day he wished to arrange for an extension of time upon the complainant's claim, by renewing the notes of the firm, and securing their payment by sundry parcels of property and securities belonging to him, Stockdale, which he proposed to transfer to the complainant, for that purpose. The deponent further states, that the complainant offered to extend the time of payment of his claim as proposed, but when the deponent had prepared some of the papers to consummate the arrangement, Stockdale changed his mind, and insisted that if the extended notes should not be met at maturity, the complainant should accept the property offered as security absolutely in payment, and return the notes to him; which the complainant declined to do. The deponent also states, that the notes mentioned in the bill were referred to by Stockdale as having been issued for hogs sold by the complainant to said firm, in the month of July 1857; that the hogs had been sold by the firm to Mr. Smith, the distiller, and were all paid for.

The complainant's claim to relief, upon the ground of a promise by Stockdale to give a mortgage, cannot be sustained. There is no description of any property designed to be mort-

Sanderson *vs.* Stockdale, *et al.*

gaged; there being not even so much as a statement whether it should be real or personal estate; and a court of equity cannot undertake to enforce a promise so perfectly vague and indefinite. Thus it becomes unnecessary to inquire whether, exclusive of the alleged promise of a mortgage, there are other grounds which entitle the complainant to relief?

The object of the bill is to secure the payment of a claim based upon three promissory notes given in the partnership name, for property sold by the complainant to the firm. It is alleged that the partnership effects have been misapplied, and appropriated to the private purposes of the individual partners, and that the creditors of the firm have been thereby delayed, hindered and defrauded.

The insolvency of the partnership is alleged; and the bill charges that a dissolution, or pretended dissolution, of the part-ship, and transfer or assignment of the partnership effects, were designed to effectuate the dishonest purpose of defeating the just claims of creditors, and misapplying and appropriating those effects to the private purposes of the partners. The complainant also states, that unless the partners are arrested in the prosecution of their said purpose, and prevented from car-rying the same into effect, by the interposition of the court, he will sustain great and irreparable damage.

Looking to these allegations in connection with others more fully stated in the bill, there is, in our opinion, good ground for the complainant to claim a reversal of the decision below.

The rights of partnership creditors, with reference to part-nership effects, came under consideration in the case of *Glenn vs. Gill*, 2 *Md. Rep.*, 16. The court there refer to *Reese & Heylin vs. Bradford*, 13 *Alabama*, 846, and adopt the doc-trine stated in that case in relation to such creditors. It is there said, that, as partnership creditors, they "have no lien on the partnership effects for the payment of their debts, and they stand, in respect to partnership property, as individual creditors do to the property of individual debtors, without hav-ing any lien thereon, until their debt is reduced to judgment, which will create a lien on real estate, and when execution is issued thereon, a lien is created on the personalty."

Whilst the creditors have no lien upon the partnership effects, by virtue of their debts, those effects may be legally transferred, *bona fide*, for a valuable consideration, either to one or more of the partners, or to mere strangers. *Collyer on Part.*, sec. 174, (*Ed. of* 1848.) *Story on Part.*, sec. 358, and the cases cited in the *notes*. It may, however, be generally stated, "that where the partners, themselves, have a lien upon the partnership effects, for the discharge of all the debts and obligations thereof, (as they have in all cases where they have not parted with it,) that lien may, in many cases, be made available for the benefit of the creditors. But then the equities of the creditors are to be worked out through the medium of that of the partners." *Story on Part.*, sec. 360.

Although the authorities recognize the validity of *bona fide* transfers of partnership property by the partners, the principle is as clearly established, that when the transfers are fraudulent, they cannot impair or injuriously effect the claims of partnership creditors. *Collyer on Part.*, secs. 573, 902, 903. *Story on Part.*, sec. 163.

Notwithstanding the principles announced in *Glenn vs. Gill*, we do not perceive how the authority of that case will be, in any degree, impaired or interfered with, by holding the complainant entitled to relief against a transfer of partnership property between the partners, alleged to have been fraudulently made, for the purpose of defrauding their creditors, the firm, at the time, being insolvent.

If, prior to the act of 1835, ch. 380, sec. 2, it might have been necessary for the complainant to have a judgment upon his claim before he could obtain the relief he seeks, or any portion thereof, such necessity is now dispensed with by that act. It provides: "That in no case of a proceeding in equity to vacate *any conveyance, or contract, or other act,* as fraudulent against creditors, shall it be necessary for any creditor or creditors, plaintiff or plaintiffs, in the cause, to have obtained a judgment on his demand, in order to the relief sought in the case, either in his or her own behalf, or in behalf of any other creditors who shall claim to participate in the benefit of the decree in the case."

This language is very comprehensive, both in relation to the transactions which may be vacated as fraudulent, and the creditors who may institute proceedings to vacate them without first having obtained judgments upon their claims.    The transactions are, *"any conveyance, or contract, or other act,"* and those who may proceed to vacate them for fraud, without having judgments, are *"any creditor or creditors, plaintiff or plaintiffs."*   Now, surely, if any creditor or creditors may do so, partnership creditors may.   And such language as *"any conveyance, or contract, or other act,"* must be comprehensive enough to include any transfer, assignment or contract between partners disposing of partnership effects among themselves, for fraudulent purposes.

The advertisement of the 17th of September 1857, purports to give notice of a dissolution of the partnership on the 27th of June previous, and the notice being signed by all the members of the old firm, it furnishes evidence that Long and Cope had retired from the firm, and had disposed of all their interest to Stockdale.   This notice of *dissolution,* and the assignment or disposal of partnership effects therein mentioned, the bill charges as being fraudulent, and designed to effectuate the dishonest purpose of defeating the just claims of creditors, and misapplying and appropriating the partnership effects to private purposes.   And the insolvency of the firm, at the time, is also alleged.

Under the act of 1835, upon the case as *now* presented, the complainant is entitled to have the assignment or transfer to Stockdale considered, for the present, fraudulent and void, and, therefore, he should have an injunction to prevent the partnership effects from being sold or disposed of, in any manner prejudicial to his claim, until the rights of the parties shall be ascertained and settled by the future proceedings in the cause.   And such injunction should embrace all the effects included in the transfer or disposition among the partners, alleged in the bill to be fraudulent, and which are to be found in the possession or under the control of either or any of the partners, as also any other effects or property still belonging to the late firm, or which may be in the possession or under the

control of either or any of the partners, by virtue of "any conveyance, or contract, or any other act, not *bona fide.*"

*Uhl vs. Dillon*, 10 *Md. Rep.*, 500, has been relied upon by the appellee's counsel, but that case differs widely from this, and the points of difference are sufficiently manifest to render it unnecessary for us to specify them.

The appellant contends that he is not only entitled to relief in relation to partnership effects, but as they may prove insufficient to give him full redress, he has a right to claim that the separate property of the members of the late firm, and especially of Stockdale, should be held liable, in this case, to make up any deficiency in the partnership effects, and, therefore, he contends that the separate, as well as joint property, should be protected, by injunction, for his benefit. But we do not think so. Under the circumstances disclosed in this case, the appellant is not entitled to an injunction in regard to separate property, *bona fide* such, and which is not held or claimed by the individual members of the firm, under any fraudulent transfer of property originally owned by the partnership. There is no allegation that either of the members of the late firm has fraudulently transferred or disposed of any portion of his separate property.

The views which have been expressed, render it proper that the decision of the court below, made on the 26th of September 1857, overruling the application for an injunction and appointment of a receiver, should be reversed, and the cause remanded for further proceedings, so that an injunction may be issued, according to the principles announced in this opinion, that an answer to the bill may be filed, and such other proceedings may be had as may be necessary and proper.

At any time, after reasonable notice to the defendants, or their solicitor, it will be proper for the court below to appoint a receiver, for the purpose of taking charge of the effects which may be covered by the injunction, provided it shall be shown to the court to be necessary for the ultimate security of the complainant, in case his claim upon those effects shall be finally established.

The costs are to await the final result.

*The decision below is reversed, and the*
*cause remanded for further proceedings.*