# THE REALTY IMPROVEMENT COMPANY

*vs.*

## OTTO F. UNGER.

*Specific Performance—Incomplete Contract—Compensation Provision in Decree—Release of Liens.*

Specific performance of a contract for the purchase of land should not be refused on account of a mistake or misstatement as to the quality of the water supply thereon, if the objectionable condition can be remedied at a moderate cost, for which compensation can be provided in the decree. p. 665

All the parties interested having executed what was clearly intended to be a release of their rights in certain wells of water, *held* that the fact that the release misdescribed the land in which the wells were located was not ground for refusing specific performance of a contract for the sale of such land, counsel for defendant purchaser having accepted the release, when tendered, without objection. p. 667

Specific performance at the suit of the vendor should be refused when there are liens on the property to such an extent that the cash payment agreed to be made is insufficient to remove them. pp. 668, 669

A contract for the sale of land which, while providing for a release clause in connection with the mortgage to be given for the price, leaves such clause to be agreed on in the future, is too incomplete to be specifically enforced. p. 669

*Decided November 17th, 1922.*

Appeal from the Circuit Court for Baltimore County (PRESTON, J.).

Bill by Otto F. Unger against The Realty Improvement Company. From a decree for plaintiff, defendant appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Walter C. Mylander,* for the appellant.

*John B. Gontrum,* with whom was *C. Gus Grason* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This appeal is from a decree for specific performance of a contract of sale between appellant, the vendee, and appellee, the vendor, of about six acres of land in Baltimore County, and two small lots adjoining the same.

The appellant corporation is the owner of a real estate development in said county known as "Rosemont," and the appellee the owner of adjoining land on which are two wells of water, one an artesian and the other a dug well. Lacking a water supply for its development, appellant entered into negotiations with appellee with a view to purchasing six acres of his land and two small parcels containing these wells, and on July 26th, 1920, the following option agreement was executed by the parties; after appellant's manager, Fletcher W. Moore, according to his testimony, told appellee: "We would require the water thoroughly tested, both as to quantity and quality if we took it because if we bought the land at all we would buy it exclusively for the reason he had a water supply there; that we didn't want the land at all"; and appellee replied "the water was fine and had had it tested a number of times and also made the remark that it was considered as good as Chattolanee water":

> "This Agreement entered into on above date by and between the Realty Improvement Company, party of the first part, and Otto F. Unger, party of the second part:
>
> "That, for and in consideration of the sum of one dollar paid by first party to second party, the receipt whereof is hereby acknowledged, it is hereby mutually agreed that first party shall have the right to put men and machinery on second party's land to test certain wells, and if same prove satisfactory to first party,

then first party will buy six acres of land in the Thirteenth District of Baltimore County, lying partly on Annapolis Road, south of English Consul Estate and north of the Brian Estate property, now known as Rosemont. Included in said sale shall be two separate pieces of ground, one approximately ten by twelve feet in size on which is erected a pump house and tank and the other ten by ten feet which contains a deep well six inches in diameter. ·

"This proposed transfer shall also convey to first party the permanent right to maintain the water pipes now under ground and relay and repair same if necessary; the price to be paid second party for said six acres of land and the two smaller pieces containing wells and pumphouse, etc., shall be the sum of seven thousand dollars, payable two thousand, three hundred and thirty-three dollars and thirty-four cents down on the first party's approval of title with six per cent. interest on unpaid balance computed and payable half-yearly hereafter, secured by first mortgage on the property aforesaid.

"The balance of principal is payable two thousand, three hundred and thirty-three dollars and thirty-three cents one year after date of transfer and two thousand, three hundred and thirty-three dollars and thirty-three cents two years after date of transfer.

"First and second parties are to mutually agree upon release clause to be placed on the individual lots plotted or to be plotted, which release price shall aggregate the sum of four thousand, seven hundred dollars; this sale to be subject to all the outstanding agreements to furnish water heretofore entered into by the party of the second part, and the party of the second part reserves the right and privilege to connect up with the water system or wells now constructed or to be constructed by the party of the first part and to have the use thereof for himself for the property still belonging to him at English Consul Estate and for any future purchasers of the said property at the same rates and terms extended to other customers of

the said party of the first part; the party of the first part hereby agreeing to continue in operation the said water system.

"Provided, however, that only four houses are to be supplied with water under this agreement and that the rate for same shall be $1.50 per month, payable half-yearly in advance.   Service may be discontinued for non-payment of rates as specified.

"To all of which we, the parties of first and second parts, hereby agree and have this day and year first above written hereby set our hands and seals.

"The Realty Imp. Co.,

"(Seal)                    By Chas. H. Steffey.

"Otto F. Unger.        (Seal)"

In pursuance of the above agreement appellant proceeded to have the water from the wells analyzed by the State Board of Health and by Penniman & Brown.   There seems to have been considerable delay in getting reports on the quality of the water, and appellee, desiring to get married and needing money for his wedding trip, and expecting to be away for a considerable time, urged appellant to conclude the matter and execute a contract of sale so that he might have the use of the cash payment of $500.   According to appellant's testimony, appellee said he didn't understand why the settlement should be held up while waiting for an analysis of the water, as he had a report from the State Board of Health showing that it was good drinking water.

Appellee denies that he made any representations as to the quality of the water prior to the signing of the option agreement, or that the question of water was discussed at the time of the execution of the contract of sale.   He testified, "the only time that water came into the proposition from the time I had anything to do with the Moore Realty Company (agent of appellant) or Steffey (president of appellant corporation) was along about the middle or later than the middle of August, when I came into Mr. Steffey's office and asked him whether he had received his report from Crook & Company

yet; and he put me off and put me off, and he told me 'no' at that time. He said, 'We have some reports here that show this water bad,' and I said, 'I haven't anything to do with that.' I said, 'I don't see where I have anything to do with the water analysis.' He had some reports from his friend Crook. He pulled out a file like, and I told him I didn't see where I had anything to do with that. I said, 'As far as that goes, I have a little certificate which shows the water is fit to drink.' "

The contract of sale was as follows:

"This Agreement, made this 31st day of August, 1920, by and between Otto F. Unger, unmarried, party of the first part, and The Realty Improvement Company, a body corporate, party of the second part:

"Whereas, The parties of the first and second parts entered into a tentative agreement of sale of the hereinafter described property;

"Whereas, The said The Realty Improvement Company has definitely decided and agreed to purchase the said property according to the terms and agreements set forth in this agreement;

"Now, therefore, this agreement witnesseth, That the said party of the first part doth hereby bargain and sell unto the said party of the second part the following described property:

"Being all that lot of ground situate and lying and being in Baltimore County, Maryland, and particularly described as follows:

"Beginning at the beginning of said whole parcel of ground conveyed by C. H. Unger to Otto F. Unger by deed dated February 18th, 1910, and running thence on the outlines thereof south 16½ degrees west 49 feet to a stone, south 55½ degrees west 10½ perches to a stone 25, north 66 degrees west 32 perches, south 53½ degrees west 10 perches, north 42½ degrees west 44½ perches to the centre of Annapolis Road; thence in the centre thereof north 8 degrees east 52 feet to the centre of a 30 foot street; thence in the centre thereof, south 61½ degrees east 500 feet, south 51½

degrees east 310 feet; thence north 38½ degrees *degrees* east 225 feet to intersect the south 54 degrees 31 minutes east 977-foot line of the whole tract, and thence on the same south 54 degrees 31 minutes east 532 feet to the beginning, containing 6 acres of land.

"Together with the permanent right to use any portion of said thirty-foot street.

"And also including two separate pieces of ground, one approximately ten by twelve feet in size on which is erected a pumphouse and tank, and the other a piece of ground ten by ten which contains a deep well six inches in diameter, and including also the permanent rights to the party of the second part, The Realty Improvement Company, to maintain the water pipes now under ground and relay and repair the same as necessary;

"At and for the price of seven thousand dollars ($7,000.00), of which five hundred dollars ($500.00) have been paid upon the signing of this agreement, the balance to be paid as follows:

"One thousand, eight hundred and thirty-three dollars and thirty-four cents ($1,833.34) within sixty days from the date hereof, and the balance to be secured by a first mortgage on said property, interest at six per centum computed and payable half-yearly hereafter from date of said mortgage; the principal of said mortgage is to be payable as follows:

"Two thousand, three hundred and thirty-three dollars and thirty-three cents ($2,333.33) one year from the date of said mortgage, less any amount paid on account of releases as stated herein, and an equal amount two years from the date thereof, less any amount paid on account of releases as stated herein; the parties of the first and second parts are to mutually agree upon a release clause in said mortgage providing for the release of the individual lots plotted or to be plotted, which release prices shall aggregate the sum of four thousand, seven hundred dollars ($4,700.00), and which payment shall be applied on

account of principal of said mortgage; and it is
hereby mutually agreed and understood that the said
party of the second part is to arrange to have water
furnished to the houses upon the property heretofore
sold by the party of the first part or now owned or
which may be sold by the party of the first part, the
houses in all not to exceed the number of four, on the
same terms and in the same manner as other houses
and lots in the development of 'Rosemont' receive or
will receive water. This contract is entered into sub-
ject to the said Otto F. Unger arranging with the pur-
chaser of property heretofore sold by him to enter
into the water system of 'Rosemont' on the same terms
and conditions as other property holders in 'Rose-
mont.'

"And upon payment of the unpaid purchase money
and the execution of the mortgage aforesaid the said
Otto F. Unger agrees to convey the property by a
good and merchantable title to the said The Realty
Improvement Company at the time of the execution
of said purchase money mortgage.

"Taxes and all other expenses to be allowed for by
the vendor to the date of transfer.

"And the said party of the first part covenants with
said party of the second part to procure prior to con-
summation of transfer of above property within the
time above limited for transfer, good and effectual
releases from all users of water supplied from the
well now on the said premises; and it is mutually
agreed between the parties hereto that in the event
that no effectual releases are obtained from users of
said water, then, in that event, the said party of the
second part shall have the right or option to cancel
this contract and rescind the same; and in such event
said party of the first part covenants and agrees with
said party of the second part to refund the deposit
paid hereunder to said party of the second part.

"Witness the hand and seal of the said vendor
and the hand of Frank M. Dyer, the

vice-president, said vendee, and the cor-
porate seal of said vendee.

                     "Otto F. Unger.   (Seal)
                     "Frank M. Dyer,

(Seal)                          Vice-President.

   "Test:

       "Clara A. McKay."

Frank M. Dyer, vice-president of appellant company, tes-
tified that at the time of signing the above contract he "stipu-
lated to Mr. Unger that I signed the contract with the under-
standing the well was pure."

It is strongly urged by appellee that appellant, having the
right under its option to test the water, if it signed the con-
tract of August 31st without such test, is estopped to rely
upon any representations that may have been made by appel-
lee as to the quality of the water, there being no reservation
as to this in the said written contract.   But, if it were impor-
tant to decide this question, we should be inclined to the
view, assuming Dyer's testimony to be true as to the oral
stipulation made at the time of signing said contract and that
the matter was put through at that time for the convenience
of appellee before a test could be made, the parties were
practically in the same position at the time of executing the
contract as if there had been no option.   But it is not neces-
sary to decide that question for two reasons, viz:

   1.   On the whole testimony, while the water appears to
be polluted and perhaps to contain too much iron to be suit-
able for household purposes, the pollution seems to be due
to surface drainage, and both conditions could be remedied
at moderate cost, for which compensation could be provided
in a decree.

   2.   There are controlling reasons why the relief prayed
cannot be granted, apart from objections which have been
urged to the water.

It will therefore be unnecessary to discuss further the
matter of the water, although the alleged bad quality of the

water was the only excuse given by appellant for repudiating its contract, in its president's letter to appellee.

A number of other objections were urged in argument, only two of which need be considered for the purposes of this opinion, viz:

1. The contract sought to be enforced was incomplete at the date of filing the bill in this case and at the date of the decree, in that it provided for a clause to be inserted in the mortgage to be given by appellant for balance of purchase money, that part of the contract being as follows: "The parties of the first and second parts are to mutually agree upon a release clause in said mortgage to be placed on the individual lots plotted or to be plotted which release prices shall aggregate the sum of four thousand seven hundred dollars," this being in round numbers the amount to be secured by the mortgage.

2. The title of the vendor at the date of the decree was not such that specific performance could be enforced against him, because:

a. There were certain restrictions on the use of the property in favor of owners of adjoining lots previously sold by appellee, which had not been released at the date of filing the bill of complaint.

b. There were water rights in said previous purchasers which had not been released at the date of the decree.

c. There were unreleased mortgage and judgment liens amounting to $7,300.

We will consider the objections in inverse order.

Sub-section "a," under objection 2, becomes comparatively unimportant, as these restrictions were formally released by all the parties in interest before the date of the decree except the Overlea Bank, mortgage and judgment creditor, which filed in the case a certificate that it was ready and willing to release the property from the restrictions. As relief must be refused on other grounds it will not be necessary to decide

what effect the absence of a deed of release from this lien creditor would have, if that were the only obstacle.

Sub-section "b." All the parties interested in the water rights executed a deed which was clearly intended to be a release of whatever interest they had in the two wells. It is true the lot described is the six acre lot, which does not contain the wells, but the recital preceding the description is as follows:. "Know all men by these presents: Whereas, we the undersigned, are all the users of water obtained from a well or wells on the property, situated in Baltimore County, in the State of Maryland, thus described"; and the recital following the description is as follows: "Whereas Otto F. Unger, the present owner of said lot, parcel or tract of land, has agreed to sell the same, unto the Realty Improvement Company, a body corporate, in fee simple, and has agreed to obtain a release of all water rights to the wells or waters in *or about* said lot, parcel or tract of land, and whereas, the obtention of the release of all rights of user of the water in, on or upon, over, under or across said land and premises has been made a condition precedent to the acceptance of title to said land by said The Realty Improvement Company, and whereas said The Realty Improvement Company has agreed that when they acquire title to said land and premises, they will grant unto all signers of this release (providing that all users or those legally entitled to the use of water now coming from said premises, duly execute this release) the right to use the water obtained therefrom, upon such terms and conditions as may be provided by the said The Realty Improvement Company, for the use thereof by residents or lot owners in the adjoining development of 'Rosemont,' now being developed by said The Realty Improvement Company; in evidence whereof, the said The Realty Improvement Company has executed these presents."

In view of the clear meaning of the parties to this release we should hardly regard the clerical error as fatal, especially as counsel for appellant accepted the release without objection when it was tendered.

Sub-section "c." This is a more serious objection. There is nothing in the record to show that appellee was able to clear up these liens except his bald answer, "yes, I am," to the question of his counsel whether he was able, ready and willing to give to the defendant a proper conveyance of a good and unencumbered estate in fee in the property mentioned in the contract of sale.

It is true one of his counsel, Mr. Gontrum, who was also attorney and a director of the Overlea Bank, the mortgagee and judgment creditor, testified that the bank was willing to release the property included in the contract of sale when "this transaction goes through," but that would not bind the bank.

Besides, after this testimony by Mr. Gontrum, appellant filed a written certificate of the said bank signed, sealed and acknowledged, in which "The Overlea Bank certified that it is ready and willing to release the property mentioned and described in the contract of sale filed in said proceedings from the operation and effect of its mortgage mentioned and described in the above entitled proceedings and also from the operation and effect of the judgments mentioned and described in the above entitled matter at the time of the execution of the deed by Otto F. Unger to The Realty Improvement Company upon the payment by Otto F. Unger of the sum of six thousand dollars."

Mr. Pomeroy in his work on *Specific Performance* (2d ed.), sec. 452, says: "If the land contracted to be sold turns out to be subject to charges, easements, rights of user or incumbrances, which extend to the whole estate, and cannot be compensated for, and removed by an application of the purchase money, the vendor is not entitled to enforce the contracts; but if the charge is a slight and immaterial one, and especially if it be an incumbrance by mortgage or judgment, which can be paid off and removed by means of the purchase money, the court may decree a specific performance making provision in the decree for removing the incumbrance."

By reference to the contract of sale it will be obvious that the liens could not be taken care of by application of the purchase money to their payment, because the balance of the cash payment was only to be $1,833.34, and the balance of the purchase price was to be secured by mortgage.

We think this objection is fatal to the relief sought.

Quite as serious is the objection herein numbered "1," on the ground of incompleteness of the contract. The contract was dependent in a material matter upon a future agreement of the parties. Even at the date of the decree there had been no agreement reached as to the release clause to be inserted in the mortgage fixing the release prices for the individual lots plotted or to be plotted, and the trial court in its decree did not and could not undertake to supply the deficiency.

In *Bond* v. *Weller,* 141 Md. 10, we said, quoting from *Miller's Equity*: "That the contract sought to be specifically enforced must be definite and certain in its terms, and free from all ambiguity, has been established by many cases. It is indeed said that the contract must be free from all shade or color of ambiguity." In *Ward* v. *Newbold,* 115 Md. 692, it was said: "No rule is better established than that which enumerates 'certainty in all its parts' as one of the essentials of every agreement to merit the interposition of a court of equity, and that 'if any of these essentials are wanting, courts of equity will not decree a specific performance.'" And in *Texas Co.* v. *United States Asphalt Refining Co.,* 140 Md. 356: "A court of equity will not undertake to specifically enforce an agreement, unless it is definite and certain in all its provisions." See also *Dixon* v. *Dixon,* 92 Md. 432; *King* v. *Kaiser,* 126 Md. 213; *Phoenix Pad Mfg. Co.* v. *Roth,* 127 Md. 540; *Thompson* v. *Thomas & Thompson Co.,* 132 Md. 483.

The decree appealed from will be reversed and the bill dismissed.

> *Decree reversed and bill dismissed, with costs*
> *to appellant.*