BORES TARSES *v.* MILLER FRUIT & PRODUCE CO.
[No. 40, April Term, 1928.]

*Decided June 21st, 1928.*

The cause was argued before Bond, C. J., Urner, Offutt, Digges, and Parke, JJ.

*Emanuel E. Ottenheimer* and *Louis J. Jira,* for the appellant.

*Daniel Ellison,* for the appellee.

Parke, J., delivered the opinion of the Court.

The original bill of complaint was filed in this case on October 24th, 1927, and this appeal is from a decree sustaining a demurrer to an amended bill of complaint and dismissing the bill. The material allegations upon which the appellant relied for relief, but which the chancellor adjudged insufficient, will now be stated.

On October 21st, 1924, the appellant, Bores Tarses, agreed to sell, and the appellee, the Miller Fruit and Produce Company, agreed to buy, three leasehold lots in Baltimore City for the sum of $9,200. A deposit of $500 was made upon the execution of the contract in accordance with the following provisions of the agreement of sale, which was in writing and under seal: "Vendor agrees to take back a second mortgage of one thousand ($1,000) dollars for one year, which shall bear interest at 6% per annum, payable quarterly, at and for the price of ninety-two hundred dollars ($9,200) of which five hundred dollars ($500) have been paid prior to the signing hereof, and the balance to be paid as follows: Cash within sixty (60) days from above date. Time being of the essence of this contract." The other terms of the contract do not bear on any of the questions raised, and so need not be detailed.

The bill of complaint averred that, although the time for the completion of the contract had long since expired, and although the vendor was and had always been ready, able, and willing to comply and to convey the property by a good and merchantable title, the vendee had delayed and evaded the performance of his obligations and had refused to pay the balance of the unpaid purchase money, accept a deed for the property, and execute the mortgage as in said contract set forth. These general allegations are followed by others which charge that the vendee refused to take title to the property sold because of alleged but nonexistent objections to the title, and that, after the vendor had offered the vendee a title insurance policy to protect it in the matter of the alleged defect, the vendee refused to accept the offer or to do anything further towards the fulfilment of its contract. The bill of complaint is not clearly drawn, and its language is vague and general, but the gravamen of the allegations is that the vendee refused to comply with the terms of sale, and "regarded" the deposit as "relinquished and forfeited for non-compliance" with its obligation, since it had abandoned its contention that the title to the property was defective; and that the vendee had thereby induced in the vendor the belief that the latter was entitled to retain the deposit as liquidated damages; and that, in consequence of this attitude of the vendee, the vendor did not file his bill for specific performance of the contract until shortly after the vendee had brought, "to the utter surprise" of the vendor, an action at law to recover the deposit on the theory that the vendee had always been ready, willing, and able to pay the purchase money, but the vendor had never been able to carry out his contract by conveying a good and merchantable title.

The vendor then professes himself ready, able and willing to release the deposit money and to reimburse the vendee for other reasonable charges and expenses in the event the title to said property should be held not good and marketable, and concludes with a prayer that the vendee may be enjoined from proceeding with its action at law, and that the contract

may be specifically enforced, and that he may have general relief.

The chancellor was right in sustaining the demurrer and dismissing the amended bill of complaint, since the contract was incomplete and uncertain in material matters, and was abandoned by the parties.

1. However inartificially expressed, the writing is sufficiently clear that the purchase price for the property sold was $9,200, with a payment of $500 received thereon, and the residue payable in cash within sixty days from the date of the contract, with the right of the vendee to have accepted as part of this cash payment a second mortgage of $1,000, payable to the vendor in one year and bearing interest in quarterly installments at the rate of six per centum per annum. But the contract leaves undefined the term: "Vendor agrees to take back a second mortgage of one thousand ($1,000) dollars for one year." The parties leave incomplete their understanding as to whether the second mortgage is to lie upon the premises described in the contract or upon some other. If at the time of the contract the vendee owned other real or leasehold property, either inference is consistent with the language used. *Sanderson v. Stockdale,* 11 Md. 563, 571, 572. Assuming that the purchaser had no other property than that bought, or that the words "take back a second mortgage" refer to the property which was the subject matter of the contract and be given that effect, a further difficulty persists.

If either of these assumptions be made and if the contract be read literally, the vendor was bound to accept as part of his cash payment a second mortgage on the premises sold for $1,000, no matter the amount of the first mortgage lien nor how the purchaser applied its proceeds. This construction would mean that, if the buyer should obtain a loan on the property for the full amount of, or even more than, the contract price, and should tender the vendor a second mortgage lien for $1,000 on the property sold and executed according to the tenor of the contract and the residue in money, the vendee would have complied with the terms of sale, despite

the fact that he would have left in his hands in cash the sum of $1,000 or more as the residue from his first mortgage lien, because the contracting parties neither limited the amount of the first mortgage lien nor required that all the funds thereby coming into his hands should be dedicated, in whole or in part, to the payment of the purchase price. In other words, the contract left the amount of the first mortgage lien and the value of the security afforded by the second mortgage lien wholly within the will of the vendee and his ability to borrow. So, the vendee, electing to avail himself of the right to tender the second mortgage as a cash payment, might strictly comply with his agreement and yet his performance would be illusory to the extent of $1,000. This possibility within the letter of the contract is a result which the parties never contemplated, and is plainly and reasonably the consequence of the contract not expressing the real agreement of the parties because of its incompleteness.

The contract thus appears to be incomplete and uncertain in material matters. The failure of the contract to indicate upon what property the second mortgage is to be given is not supplied by any appropriate allegation in the bill of complaint. And the contract is manifestly incomplete in its terms, which is a form of uncertainty, as is evidenced by its leaving the parties in so unequal a position as to give the vendee the power to compel the vendor to take as an equivalent for cash a second mortgage lien whose actual value will depend upon factors solely in the control of the vendee. Nor is there anything in the language of the contract itself, and in the circumstances set forth in the bill of complaint under which it was made, that would justify an implication by the court of a stipulation in the contract relieving it of the unequality and unfairness consequent upon the incompleteness or uncertainty of its provisions. The language of the agreement affords the court no more right to infer that the aggregate of the first and second mortgage shall not exceed the purchase money than that this aggregate shall not be over two-thirds, three-fourths or other proportion of the sale price. As was stated in *Bond v. Weller*, 141 Md. 8, 11, "The con-

tract is therefore incomplete, indefinite and uncertain in a most important particular. The court cannot supply this omission or remedy the defect, for any attempt to do so might result in enforcing 'precisely what the parties never did intend or contemplate.' "

The language of Lord Hardwick in *Burton v. Lister*, 3 Atk. 386, is frequently quoted in this connection. Speaking of contracts which the court will enforce, he said: "Nothing is more established in this court than that every agreement of this kind ought to be certain, fair and just in all its parts. If any of these ingredients are wanting in the case, this court will not decree a specific performance." *Miller's Equity Proc.*, secs. 656, 681, 683, 684; *Sanderson v. Stockdale*, 11 Md. 563, 571, 572; *Bond v. Weller, supra; Wilkes v. Burns*, 60 Md. 64, 67; *Horner v. Woodland*, 88 Md. 511, 513; *Realty Improvement Co. v. Unger*, 141 Md. 658, 659; *Warren Mfg. Co. v. Baltimore*, 119 Md. 188, 205; *Brown v. Summerfield*, 153 Md. 363.

2. In *Miller's Equity Proc.*, sec. 661, the rule with respect to the effect of lapse of time upon suits for the specific performance of a contract is thus stated: "Specific performance is relief which will not be granted unless the party seeking it comes promptly, and as soon as the nature of the case will permit; he cannot call upon the court unless he has shown himself ready and desirous, prompt and eager. The delay of either party to a contract in not performing its terms on his part, or in not prosecuting his right to the interference of the court by the institution of an action, or in not diligently prosecuting his action when instituted, may constitute such laches as will disentitle him to the aid of the court, and so amount, for the purpose of specific performance, to an abandonment on his part of the contract." *Fry on Specific Performance*, sec. 1100; *Pomeroy's Specific Performance* (3rd ed.), sec. 403.

This rule is peculiarly applicable to the facts of the pending case. Here the parties agreed that the contract would be performed within sixty days and expressly stipulated that time was the essence of the contract. When, as in the appeal

at bar, time is not inserted as a merely formal part of the contract but is specifically and explicitly declared to be the essence of the contract, the court will not lend its aid to enforce specifically the contract regardless of the limitation of time. *Miller's Equity Proc.,* sec. 663; *Fry on Specific Performance* (3rd ed.), secs. 1075, 1077, 1090; 2 *Story's Eq. Juris.* (14th ed.), secs. 1064, 1059; 4 *Pomeroy's Eq. Jur.* (4th ed.), sec. 1408; *Coleman v. Applegarth,* 68 Md. 21, 27, 28; *Derrett v. Bowman,* 61 Md. 526, 528; *Acme. Building Co. v. Mitchell,* 129 Md. 406, 411. Notwithstanding that time was thus agreed to be of the essence of the contract, and that the vendee, after making the payment of $500, neither took possession nor did anything else in compliance with its agreement, the vendor delayed for almost three years after the expiration of the sixty days period within which the sale was to be consummated before he began any suit against the vendee. Nor was this delay induced by the action of the vendee. It is true the bill of complaint alleges, in effect, that the vendor had been always ready, able, and willing to comply, and that he did not proceed to enforce the contract because the vendee had led him to believe, before the expiration of the time limit of sixty days, that the vendee had abandoned the contract and that the deposit was to be retained by the vendor as damages. But these facts did not warrant any delay on the part of the vendor, and, instead of justifying his lethargy, should have aroused him to action. Independently of the provision that time was of the essence of the contract, the effect of this notice from the vendee upon the vendor's position is thus expressed in *Pomeroy on Specific Performance* (3rd ed.), sec. 412; "When one party, even without just or sufficient reason for so doing, and as a mere act of arbitrary will, notified the other that he will not perform the contract—shall treat it as at an end—acquiescence by the party notified will cut off the latter's right of enforcement, and this acquiescence will be sufficiently shown by a delay in commencing a suit which would otherwise be too short to prejudice his right." See section 416. *Fry on Specific Performance* (3rd ed.),

secs. 1109, 1060, 1061, 1021-1024. So, in addition to time being essential by express contract, time was made essential by notice, and the vendor's subsequent delay for almost three years, with his undisturbed retention for a like period of the vendee's deposit money as "liquidated" damages, as averred and so named in the bill, would constitute weighty evidence of an abandonment of the contract by both parties. *Supra.* *Whiteford v. Yellott,* 104 Md. 191, 196, 197.

The appellant does not show that his delay was attributable to any conduct of the vendee that could have misled him as to its intention. Neither does the vendor explain and account for his inaction, beyond ascribing it to the fact that the vendee had repudiated the purchase on an alleged but unfounded defect in title of the property sold and had, also, led the vendor to believe that it had acquiesced in his retention of the deposit money as damages for the vendee's refusal to perform its contract. It is clear that this situation was satisfactory to the vendor, and that he would not have begun an action for specific performance, if the vendee had not brought a suit just within the three years' period of limitation for the recovery of the deposit. These facts, however, do establish an abandonment of the contract by the vendee within the sixty days allowed for its performance, and an acquiescence therein by the vendor for such a period as would, under the circumstances of this record, indicate that the contract has long since been abandoned by both parties. On appellant's own theory of the effect of the facts, he must fail, since specific performance will not be decreed of a contract which the parties had abandoned. *Supra.* Compare 3 *Williston on Contracts,* secs. 1826, 1827, 1834.

For the reasons stated the decree will be affirmed, but without prejudice to either party so far as either may have any right of action at law.

> *Decree affirmed, with costs, but without prejudice to either party to enforce any demand against the other at law.*