# MARYLAND REPORTS.

OCTOBER TERM, A. D., 1883.

JOSEPH B. GIRAULT and ELIZABETH F. GIRAULT, his Wife *vs.* LORENZO J. ADAMS and ANNIE W. ADAMS, his Wife. LORENZO J. ADAMS and ANNIE W. ADAMS, his Wife *vs.* JOSEPH B. GIRAULT and ELIZABETH F. GIRAULT, his Wife.

*Equity practice—Examination of Witnesses—Husband and Wife—Loan on the faith of the Wife's separate property—Specific performance—Sale of Mortgage—Reimbursement for amount actually advanced.*

Where the complainant in a case in equity has been examined as a witness, and some months afterwards the defendants have been examined and cross-examined, and discharged without any reservation of the right to recall, or agreement for further examination, they cannot without the special leave of the Court, be again recalled for the purpose of contradicting the complainant's testimony.

G. having purchased with his own money a vacant lot of ground, conveyed the same to his wife who had no property of her own before marriage, and acquired none afterward, except what she received from her husband. Desiring to build a house on the vacant lot, G. by the authority of his wife applied to a Building Association to borrow money for that purpose, agreeing to mortgage the property to secure the same. Finding that he could obtain the money from his sister, who was then unmarried and living with him, negotiation with the Building Association was discontinued. The sister had a mortgage of $3325, not due, which was paying her seven per cent. interest. To accommodate her brother, she sold this mortgage at considerable loss, and out of the proceeds paid to him the sum of $2965, all of which was applied

to the building of the house. The sister with her husband filed a bill to have the lot with the improvements thereon, made responsible for, and charged with, the payment of whatever was due and owing to her. The bill charged that before the money was supplied there was an express agreement between her brother and his wife on the one side, and the complainant on the other, that the mortgage should be sold for the purpose of raising the money, and that complainant should be secured by a mortgage on the property, so that she should suffer no loss by the sale, and should be secured the annually accruing interest thereon. The defendants, in their answer, denied the agreement set up in the bill, but G. admitted the receipt of the money and its use in building the house on his wife's lot, though he set up another agreement with his sister respecting the loan, which, however, included in it a contract for mortgage on this very property to secure the interest annually, and a portion of the principal, while the wife, in her answer denied all knowledge of any agreement to mortgage her property to the complainant. The testimony showed that the wife of G. knew the money was borrowed from his sister, that it was borrowed for the purpose of building a house on the lot, and that it was so applied. It also showed that she knew the money was borrowed on the faith of the property. HELD:

1st. That the agreement to give a mortgage as alleged in the bill, was not so satisfactorily established by the proof as to authorize a decree for a specific execution.

2nd. That inasmuch as the money was borrowed for the improvement of the wife's property, with her knowledge, and was so applied, the sister was entitled to be compensated to the extent of the amount actually advanced, and the property was answerable therefor; but not for the loss she sustained on the sale of the mortgage.

CROSS-APPEALS from the Circuit Court for Anne Arundel County, in Equity.

The case is stated in the opinion of the Court. The Court below (MILLER, J.,) passed a decree directing the defendants to pay to the complainant, Annie W. Adams, on or before the 16th day of March, 1883, the sum of $2965, with interest thereon, from the 1st of September, 1880, or to secure the payment thereof by a mortgage duly executed by the said defendants, on or before the

Girault and Wife *vs.* Adams and Wife.

said 16th of March, 1883, to the said Annie W. Adams, on the real estate mentioned in the proceedings, conditioned for the payment of the aforesaid sum of money and interest thereon as aforesaid, on or before the 16th of March, 1884, with interest thereon till paid, together with the complainants' costs of suit; and on default of such payment, or the execution of such mortgage, the property to be sold. The complainants were willing to accept the decree as a finality, but as the defendants appealed, the complainants appealed from so much of the decree as did not give the complainant, Annie W. Adams, the full amount of her claim, to wit, the sum of three thousand three hundred and twenty-five dollars.

The cause was argued before ALVEY, STONE, IRVING, and RITCHIE, J.

*S. Thos. McCullough*, and *William H. Tuck*, for Girault and wife.

This being a bill for specific performance, to entitle the complainants to a decree, the contract should be clearly stated in the pleading and as clearly proved. The evidence fails to show an agreement for a mortgage on the part of the husband; and even if he had made such an agreement, his wife would not be bound unless she assented, and of this there is no proof. *Semmes vs. Worthington*, 38 *Md.*, 298; *Six vs. Shaner and Wife*, 26 *Md.* 415, 442; *Billingslea vs. Ward*, 33 *Md.*, 48; *Small vs. Owings*, 1 *Md. Ch. Dec.*, 363; *Smith vs. Crandall*, 20 *Md.*, 482.

But if the wife had verbally agreed to secure this loan to her husband, by a mortgage on her property, would such an agreement be enforced against her? A married woman may be bound by her contracts, in respect to her *separate estate*, but this property is held by Mrs. Girault by no such title as that. She holds the *legal* estate in fee,

and the doctrines in equity, under which such persons are sometimes held to be liable, do not apply to such estates. All contracts made by a married woman are void at law and in equity, unless in writing since the Act of 1872, and then the husband must join ; or unless they have reference to her separate property. If she makes a contract that cannot be enforced against her, and it is *executed* by her, she cannot avoid what she has done. The Statute of Frauds does not apply to such a case, nor, as we suppose, does the law in relation to the acts of married women. *Six vs. Shaner and Wife, et al.,* 26 *Md.,* 415.

It is said to be a hard thing, that she should not be secured, or the money paid. There are two sides to that question, and it can be fairly solved only by consideration of all the circumstances, *then* and *now.* If the defendants did not intend, at the time the money was borrowed, to give this mortgage, that is, if it was no part of the agreement for the loan, they ought not to be made to do it. That would be making a contract by the Court, into which the parties never entered—making the defendants do something for the complainant that they never intended, and she never expected. Besides, if Mr. Girault borrowed the money under the belief and agreement, with his sister, that it was to be paid or settled by some equivalent other than money, or by something, or in some way, less than a full equivalent, and she has, by marriage, and changing her will, put it out of his power to comply *in that way,* would it not be unfair to compel him to a mode of settlement more onerous and grievous than that in their minds at the time ?

Under the circumstances of the parties at this time, it is no more inequitable to deny to the lender of the money the benefit of the lien claimed, than it would be unjust and unreasonable to take the wife's property to pay his debt. She lent it to the husband, and not to him and his wife ; the liability was his, and not her's, and she ought not to be

held responsible in any way. If loss must fall on Mrs. Adams, it will be attributed to her dealing with her brother, as she did, even according to her own showing, without reducing the agreement to writing, and informing Mrs. Girault that she expected her property to be bound for the debt. If she confided in her brother to have carried into effect a proposition concerning the wife's property, of which the wife had no knowledge, and that expectation has been disappointed, the law places the loss on the one who could have prevented it, for she might have refused to treat with *the one,* and ought to have insisted on making an agreement *with both.*

The Statute of Frauds is relied on in the answer. That defence is conclusive, even if an agreement *not in writing* was proved. As to the wife there has been no part performance, because no agreement of any kind is proved as to her. As to the husband, the agreement alleged is denied and is not proved. There can be no avoidance of the Statute in such case, on the ground of part performance. *Alexander vs. Ghiselin,* 5 *Gill,* 138, appears to be conclusive on the point. There the money had been advanced on the promise of a mortgage on land and negroes; but relief was denied as to the lien on the land, though enforced against the personalty, because, as to that the Statute did not apply. *Clabaugh vs. Byerly,* 7 *Gill,* 354.

The claim, on cross-appeal, that the complainant is entitled to more than the sum actually advanced, would be inequitable. The defendant, Mr. Girault, has been paying seven per cent. on $3325. Now, there can be no reason for demanding a mortgage for that amount, when he only received $2965, except on the theory that he promised his sister she should lose nothing by selling the New Jersey mortgage; but that was based on an agreement that he should not repay more than $1000, and the complainants cannot claim the benefit of the arrangement, without yielding what was favorable to the defendants, as testified to by Mr. Girault.

*R. E. Wright,* and *Frank H. Stockett,* for Adams and wife.

The testimony and circumstances of this cause, as shown in the record, clearly establish the right of the complainants, and a contract by the defendants founded upon proper consideration, to require the defendants to execute a mortgage of the separate estate of the defendant, Elizabeth, to secure the money appropriated and advanced by the complainant, Annie, as disclosed in the case, or on their failure to do so, to a decree for a sale of the property to repay the money, and such relief will be recognized and enforced by a Court of equity. *Jackson vs. West,* 22 *Md.,* 71, 83; *Hall & Hume vs. Eccleston,* 37 *Md.,* 510, 519–20; *Cole vs. Cole,* 41 *Md.,* 301; *Wilson & Hunting vs. Jones,* 46 *Md.,* 409; *Frostburg Per. Buil. Asso. vs. Hamill,* 55 *Md.,* 301; *Alexander vs. Ghiselin,* 5 *Gill,* 139; *Yale vs. Dederer,* 22 *N. Y.,* 450; *Caswell vs. Hill,* 47 *N. H.,* 407.

Where no particular time for the payment of a mortgage is limited by the agreement, it is to be paid in a reasonable time. *Farrell vs. Bean,* 10 *Md.,* 217; *Triebert vs. Burgess,* 11 *Md.,* 452.

The case of *Six vs. Shaner and Wife, et al.,* 26 *Md.,* 416, on which much reliance was placed by the defendants in the argument in the Court below, differs essentially from this. In that case, the decision was under the law as it stood prior to the Code, in reference to the estates of married women, and there she had no *sole* or *separate estate* in the property in controversy. Now under the operation of the second section of Art. 45 of the Code, all property acquired as this was, is held by a *feme covert* as her sole and separate estate, as explained by Judge BARTOL in his opinion, in 37 *Md.,* 510, and as was again decided in 55 *Md.,* 315.

The Statute of Frauds can furnish no defence or obstacle to the relief asked for, for the complainant Annie had performed all of her part of the contract or agreement. *Alex. Brit. Statutes,* 515, and the authorities there cited;

*Alexander vs. Ghiselin*, 5 *Gill*, 139 ; *Hamilton vs. Jones*, 3 *G. & J.*, 127 ; *Md. Savings Institution vs. Schroeder*, 8 *G. & J.*, 93 ; *Moale vs. Buchanan*, 11 *G. & J.*, 314 ; *Artz and Wife vs. Grove*, 21 *Md.*, 456.

If one party performs as much of a contract as to incur loss, he is entitled to have the contract specifically performed, if he is in no default for non-performance of the residue. Hence it is, that Courts decree the specific performance of parol contracts, the part performance by one taking the case out of the Statute, and the refusal to perform on the other side being a fraud. That Statute was enacted to provide, as far as possible, against the perpetration of frauds, and the Courts will not permit the Statute designed to prevent fraud, to be made an engine of fraud. *Cole vs. Cole*, 41 *Md.*, 304.

The proof shows, and it is conceded, that the complainant, Annie, appropriated her security for $3325.00, to the use and benefit of the defendants, and the sacrifice which she made at the instance of her brother, was entirely for his accommodation, and on the agreement that she should have a security for the full amount, and at the same interest—seven per cent.—which she was receiving. By this means, she lost the entire debt, $3325.00. The fact that the whole amount did not go into the hands of her brother, and that only $2965.00 was actually applied to the improvement of his wife's property, can make no difference in her right to recover. She was injured to that extent, and performed fully and in good faith her part of the contract and agreement made with her brother, and by this agreement the wife was bound.

IRVING, J., delivered the opinion of the Court.

The undisputed facts of this case are as follows : Joseph B. Girault, a professor in the Naval Academy at Annapolis, in August, 1877, purchased a vacant lot of ground, in Annapolis, for eight hundred dollars, which he paid for

with his own money, and caused to be conveyed to his wife, Elizabeth F. Girault. Mrs. Girault had no property of her own before her marriage and had acquired none after marriage, except what she has received from her husband; who now has none, because he has given all he had to his wife. Desiring to build a house on the vacant lot, in the spring or summer of 1879, by the authority of his wife, Mr. Girault negotiated with a building association for the loan of money to build with, agreeing to mortgage the property in security for the loan. Finding he could secure the money from an unmarried sister, who was living with him, the negotiations with the building association were dropped. The sister had a mortgage of $3325 upon property in New Jersey, which was not due, and which was paying her seven per cent. interest. This was all the property the sister had, and was the remnant of what had been received by her from her father's estate, through this brother who was executor. This mortgage she agreed to sell, and did sell, at considerable loss. Of the proceeds she paid over to her brother the sum of $2965, in three different payments, as follows, in April, 1879, $665; in August, $2000; and in November of same year, $300. All this money was applied to the building of the house. The bill charges that before this money was supplied there was an express agreement between her brother, and his wife on the one side, and the complainant on the other, that the mortgage should be sold for the purpose of raising the money, and that complainant should be secured by a mortgage on the property so that she should suffer no loss by the sale, and should be secured the annually accruing interest thereon. The defendants in their answer deny the agreement set up in the bill; but Mr. Girault admits the receipt of the money and its use in building the house on his wife's lot; though he sets up another agreement with his sister respecting the loan, which, however, includes in it a contract for mortgage on this very property to secure

the interest annually, and a portion of the principal; while the wife in the answer denies all knowledge of any agreement to mortgage her property *to the complainant.*

The testimony consists entirely of the evidence given by the parties in their own behalf, and on cross-examination; and before considering the questions arising upon its legal effect, we will dispose of an exception to a portion of it. Exception was taken by complainant to the re-examination and testimony given therein, upon the 15th of February, 1882, after the parties had been examined and cross-examined and discharged without any reservation of the right to recall, or agreement for further examination. This exception was sustained by the Circuit Court and we think properly, and for sufficient reasons, which we adopt, in the language of the Circuit Court: "These witnesses had been examined on the 12th day of January, 1882. Mrs. Adams, the complainant, had testified, on the 7th of October, 1881, before they were examined; and when they were subsequently examined was the time for them to have given, in their examination-in-chief, any testimony in their power to give in contradiction of what she had said. No questions specially directed to her testimony were then propounded to them, and after cross-examination, they left the commissioner's office. If the same state of case had occurred in a trial at law, they could not have been thus recalled, without the special leave of the Court, for the purpose of contradicting what a previous witness had stated; and the rule is the same in the examination of witnesses before a commissioner in a case in equity. (*Heise's Case,* 44 *Md.,* 453.) It is important this rule should be observed, not only for the orderly conduct of an equity suit, but for the purpose of justice. A witness and a party to a cause, who had been examined and cross-examined, after his opponent had testified, ought not to be recalled after he has had three months to reflect upon his adversary's testimony, for the purpose of contradicting that

testimony, unless special leave of the Court is first obtained." We will add that the Court should always require satisfactory ground to be laid for such leave to be granted. This being a bill for specific performance, it was the unquestionable duty of the complainant to make out the case set up in the bill with such distinctness, certainty and legality in all its parts that the Court could have no difficulty in deciding exactly what the contract was between the parties which was sought to be enforced, and that it was such a contract as ought to be enforced by its decree. We do not think the precise contract, as alleged, has been so satisfactorily established in the proof that the Court would be justified in decreeing its enforcement; but we think it a case for decree for compensation, under the prayer for general relief.

It is abundantly clear from the testimony of Mr. and Mrs. Girault, that Mr. Girault had been authorized, by his wife, to borrow money on mortgage upon the property, for the purpose of erecting a house on Mrs. Girault's lot. Application had been made to a building association for it, with the offer of a mortgage in security for the loan. Thus far his authority is admitted. The negotiation with the building association was discontinued, because, and only because, the money could be secured from the sister. Now, Mr. Girault states in his testimony that the interest on all was to be secured by a mortgage on this very property; but he insists that only a portion of the principal was to be so secured. This qualification of the agreement the sister denies; so that his averment is not made good; while he establishes the receipt of the money, and its application to the building of the house on his wife's property. Manifestly, *he* considered himself fully authorized to borrow money from any source, on the faith of that property, or he would not have engaged to mortgage it to his sister. Mrs. Girault says the money was to be borrowed from the building association and was

not borrowed from it, because it was procured from an-
other source. She knew, therefore, that it was obtained.
She knew what was to be done with it, for she directed
its procurement, for the purpose of building a house on
her lot. The proof is, it was so applied. She says her
husband told her it was not obtained from the association,
but was obtained elsewhere. From all that she says, it is
impossible to doubt that she knew the exact source whence
it came. In one part of her testimony she says she only
knew of his getting some money from his sister, viz., the
thousand dollar payment. In another part of her testi-
mony, when speaking of the whole loan, she says that
Mrs. Adams begged her husband to take it, and she was
present at some, if not all, the business interviews. The
knowledge of the facts she states, assuming them to be true,
establishes the knowledge on her part of where the money
was obtained, and that it was for her use in building the
house; for the negotiations with the building association
were broken off because of the procurement of the money
from Mrs. Adams. We irresistibly conclude, therefore,
that she knew the money was borrowed from Mrs. Adams,
and that it was borrowed for her, to build her house; that
she knew it was so used, and also, that it was borrowed
on the faith of that property. The husband was not seek-
ing the money for himself, for he had no property to im-
prove or to mortgage. He was borrowing it for her; and,
as she knew he was without money, with which to repay
it or secure it, she could not have thought that he only
was to be bound for it. The husband did not get the
money from the source which the wife admits was to be
secured by mortgage; but it was obtained from the com-
plainant upon promise of a mortgage on that very same
property to secure the payment of the interest annually,
as we have already stated. It may be true, that there
was no *special* authority to borrow from the sister and
pledge the wife's property for its payment; but that is not

necessary if he had general authority to borrow wherever he could.  Inasmuch as the wife knew whence it was obtained, and did not object, but on the contrary, acquiesced in its being applied to the permanent improvement of her property, by a building greatly enhancing its value, we must regard her as having accepted the loan with sufficient knowledge of the facts to make the husband's act within the scope of his authority.

It appears that, at the time the money was loaned, Mrs. Adams did not know the property had been conveyed to Mrs. Girault, but the brother knew it, and Mrs. Girault knew it; and as the negotiation was with reference to it as security, the loan must, in equity, be . regarded as made to the.person actually getting the benefit, and on the faith of the property designated, and really owned by the person benefited.  The failure to disclose the true state of the title, and the misapprehension of the lender about it, only commends the case more strongly to the ear of a Court of equity.  We think there is abundant proof to justify this Court in preventing the wrong which the appellants, by their resistance of this claim, seek to inflict upon Mrs. Adams.  The well considered cases of *Bowie vs. Stonestreet*, 6 *Md.*, 418; *Green vs. Drummond*, 31 *Md.*, 71; and *Powel vs. Young*, 45 *Md.*, 494, fully establish that where specific performance cannot be decreed, because of uncertainty in the terms of the agreement, insufficiency of proof to clearly establish the precise contract alleged, or by reason of the Statute of Frauds being relied on in defence, a Court of equity will, when there is no remedy at law, render relief by way of compensation to the extent of money actually paid upon the alleged contract.  An unreported case in this Court, decided in July, 1858, *Jacob Eackle vs. George W. Smith and others*, also maintains this doctrine.  We agree with the Circuit Court, that it is perfectly competent for a husband and wife to make a binding agreement for the improvement of the wife's

estate ; and if it is performed by the other party, the money actually advanced ought to be charged on the wife's estate. To justify a Court of *equity* in so charging the estate, it is not indispensably necessary that the intention to charge the separate estate should be evidenced in writing. It may appear *aliunde*. *Koontz vs. Nabb*, 16 *Md.*, 549 ; *Jackson vs. Cole*, 29 *Md.*, 71. If it sufficiently appear that the dealing was had with direct reference to the estate belonging to the wife, no matter whether the proof be in writing or in parol, her estate will be charged in equity. From what we have said already, it is clear the wife's estate should be charged in this case. With respect to the appeal of Mrs. Adams, we need only say that the Circuit Court committed no error in disallowing the loss on the mortgage in the sale of it. Only the money actually advanced will be compensated for in the decree to be passed on the remand. The cause will be remanded under Article 5, section 28, without affirmance or reversal, to the end that a decree may be passed directing the sum of twenty-nine hundred and sixty-five dollars, with interest from the first day of September, eighteen hundred and eighty, until paid, or brought into Court, to be paid or brought into Court to be paid the complainant, Mrs. Adams, together with the costs of both Courts, by a day to be named by the Court, and in default of such payment, directing the sale of the said property as the separate property of Mrs. Girault for its payment.

*Remanded, without affirmance or reversal,*
*under Art. 5, sec. 28, of the Code.*

(Decided 13th December, 1883.)