## NICHOLAS K. BROWN *v.* EMANUEL P. SUMMER-
FIELD.

*Sale of Restaurant—Good Will—Specific Performance—Incom-
plete Contract—Surrender of Leasehold—Appor-
tionment of Rent.*

A contract for the sale, to the owner of a building, of the
equipment of a restaurant therein, and of the stock of mer-
chandise on hand in the restaurant, *held* to include the good will
of the business, mainly associated with the place of its location.
pp. 361, 362

On the surrender to the landlord of a leasehold interest in
part of the leased premises, the rent is apportioned, and is
extinguished in an amount equal to the proportionate rental
value of the part surrendered.                           pp. 362, 363

A contract, by the lessee of a building, to sell to the lessor
the equipment and good will of a restaurant conducted by such
lessee on the first floor, *held* not susceptible of specific perform-
ance, the contract being incomplete since, while contemplating
the surrender of the first floor, it omitted any agreement as to
the other floors, as to the amount of the apportioned rent still
to be paid by the lessee, and as to when its payment was to begin.
p. 363

*Decided June 10th, 1927.*

Appeal from the Circuit Court of Baltimore City
(Stump, J.).

Bill by Nicholas K. Brown, trading as the "St. Regis,"
against Emanuel P. Summerfield. From a decree sustain-
ing a demurrer to the bill and dismissing the bill, plaintiff
appeals. Affirmed.

The cause was argued before Boyd, C. J., Pattison,
Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Willis R. Jones* and *Herbert Levy,* for the appellant.

*Vernon Cook,* with whom was *Richard B. Tippett* on the
brief, for the appellee.

Parke, J., delivered the opinion of the Court.

This appeal is from the decree of the chancellor sustain-
ing the demurrer to the second amended bill of complaint
brought by Nicholas K. Brown, trading as the St. Regis,
appellant, against Emanuel P. Summerfield, appellee, in
the Circuit Court of Baltimore City, and dismissing the bill
of complaint. The demurrers to the original bill and to the
first amended bill were successively sustained, with leave to
amend, but they present no material question which does
not arise on the third demurrer, so there will be no occasion
to consider separately the first two bills of complaint.

The facts admitted by the demurrer show that the appel-
lee is the owner of a property in Baltimore known as 1817
North Charles Street, and, on June 21st, 1921, he demised
unto Nicholas K. Brown the brick store and dwelling there-
on and such portion of the lot which extends back of the
store as to include one-half of the garage for the term of
six years beginning on September 1st, 1921, at the rental
of fifty-five hundred dollars a year, payable in advance
in twelve equal instalments on the first day of every month.
The lease provided that the tenant should use the first floor

of the demised premises as a restaurant and dining room and for no other purpose; that the upper floors of the rented building should be used for apartments or hotel purposes; and that, for the purpose of converting the first floor of the building into a restaurant, the tenant, at his own expense and within four months after the beginning of the term, would make certain specified changes and alterations which would thereupon become "permanent improvements to the building." The landlord, in turn, covenanted that, as the owner of an adjoining property, he would not lease it to any person engaged in the business which the tenant was to carry on under the stipulations of his lease; and that, at the expiration of the term, the tenant should have the preference for another period of five years at a rental equal to the best obtainable by the landlord from any other responsible and prospective tenant. The only other provisions of the lease that need be mentioned are those requiring the tenant to bear the expense of all repairs and permitted alterations, and preventing him from assigning the lease or sub-letting the premises or any part thereof without the written consent of the landlord.

The appellant as tenant took possession, made the contemplated improvements, and conducted on the first floor of the premises a restaurant called the St. Regis. While carrying on this business the appellant and the appellee executed a sealed instrument of the following form:

"March 22nd, 1926.

"In consideration of $200 paid on account of purchase price, receipt whereof is hereby acknowledged, Nicholas K. Brown hereby agrees to sell and E. P. Summerfield hereby agrees to buy at a price equal to 50% of the invoice price of all equipment now situated in the St. Regis Restaurant and 50% of the cost of all repairs and additions made to the building 1817 N. Charles Street, by the St. Regis Restaurant and 100% of the invoice price of all stock of merchandise on hand at date of settlement. Settlement within thirty days from date hereof. Delivery upon

payment of balance of purchase price. Time is of the
essence of this contract.

"Witness our hands and seals this 22nd day of
March, 1926.

"Nicholas K. Brown.    (Seal)

"Rosalie Brown.       (Seal)

"E. P. Summerfield.    (Seal)

"Signed, sealed and delivered in the presence of

"Willis R. Jones."

Rosalie Brown, wife of the appellant, is not included in
the body of this paper writing either by name or by descrip-
tion, and the last amended bill of complaint shows that she is
without any interest in the subject-matter of the litigation,
and that her signature was a mere formality. She did not
sign the following supplementary agreement between her
husband and the appellee, executed under seal on the fol-
lowing 17th of April:

"This agreement made this 17th day of April, 1926,
between Nicholas K. Brown and E. P. Summerfield,
witnesseth:

"That the agreement heretofore signed by the par-
ties under date of March 22nd, 1926, in reference to
sale of the St. Regis Restaurant shall hereby be modi-
fied as follows:

"The payments under said agreement are to be as
follows: Eight hundred dollars ($800) cash, the re-
ceipt whereof is hereby acknowledged, fifteen hundred
dollars ($1500) to be paid May 3rd, 1926. The par-
ties hereto mutually agree that they will join in re-
questing all of the present creditors of Nicholas K.
Brown to release Mr. Brown from their respective
claims and that Mr. Summerfield will assume the pay-
ment thereof and will pay them such amounts in cash
as may be found necessary and will pay their respec-
tive balances after the lapse of such period of credit
as said creditors may be willing to give.

"There shall be deducted from the purchase price
to Mr. Brown all amounts released by creditors and

assumed by Mr. Summerfield, and pertaining to the St. Regis Restaurant, and included in the list heretofore submitted by Mr. Brown to Mr. Summerfield and the balance due under the original agreement shall be paid as follows: One-half by promissory note payable four months after May 3, 1926, and the remaining one-half by promissory note payable eight months after May 1, 1926, both of said two notes to be secured by chattel mortgage upon the fixtures and equipment mentioned in the agreement of March 22, 1926. The said E. P. Summerfield shall have the right at any time to anticipate the payment of said notes, and said notes shall bear interest at the rate of six per cent. from May 3, 1926. The itemized statement as to the · cost of equipment, repairs and merchandise submitted by Mr. Brown is subject to verification by Mr. Summerfield on or before May 3, 1926.

"It is agreed that the transfer of the property is to be made on May 3, 1926, and the original agreement of March 22, 1926, in all other respects is ratified and confirmed, and that time is of the essence of the contract.

"Witness the hands and seals of the parties hereto.

"Nicholas K. Brown.     (Seal)
"E. P. Summerfield.     (Seal)

"Witness:

"Vernon Cook.
"Willis R. Jones."

The further allegations are that the appellant prepared and delivered to the appellee a statement of the repairs and additions made to the building, with their cost, and an inventory and invoice price of the equipment and of the stock of merchandise on hand, subject to an adjustment for any reductions or replenishments of stock as a result of the normal demands of the restaurant and necessary to its unimpaired maintenance as a going business; and that, having complied with the requirement of the Sales in Bulk Act (Code, art. 83, sec. 100), and having suffered an injury through the

refusal of the appellee to carry out the alleged contract, which is not compensable in damages at law, the appellant is entitled in equity specifically to enforce the two recited paper writings as together constituting the contract between the parties.

The appellant's interpretation of the two documents, taken as forming the contract in writing of the litigants, is that, for a purchase price whose amount was ascertainable and definitely fixed by a method specified in the first instrument, the appellant and the appellee agreed and covenanted (1) to sell and buy the stock of merchandise on hand on the given date and the equipment, together with its good will, of the restaurant business known as the "St. Regis," and conducted by the appellant on the first floor of the entire premises occupied by the appellant under the demise of the appellee, and (2) for the appellant to surrender the term for the whole property as originally leased, and the appellee to accept this surrender and to release the appellant from all remaining obligations for the unexpired term in the premises as an entirety.

The first paper writing omits to set out the subject-matter of the contract of sale, but does prescribe the manner and means for ascertaining the purchase price, the period within which its payment was to be made, and when delivery was to take place; and declares time to be of the essence of the purporting agreement. The second document was chiefly to protect the purchaser from the claims of the seller's subsisting creditors, to give credit terms for a part of the price, and to extend the day for the delivery of the property. By the recitals of this supplementary paper, its references to the original document, and its object and subject-matter, sufficient is disclosed to make certain that the contract contemplated the sale of the business, with its equipment, carried on by the appellant in connection with a particular place under the name of the St. Regis Restaurant. Incident to this business, and an important element in its value, was its good will, which, being an inducement for the purchase

of the business and mainly associated with the place where the restaurant was located, would by reasonable implication be included in any transfer of title by sale. *Wilmer v. Thomas,* 74 Md. 485, 488; 3 *Williston on Contracts,* sec. 1640; *Lane v. Smythe,* 46 N. J. Eq. 443.

As the appellant had agreed and covenanted that the first floor of the demised premises should be used by him as a restaurant and dining room and for no other purpose, during the continuance of the lease, the contract of sale by the tenant to the landlord of the restaurant so conducted by the tenant as agreed would inevitably have contemplated some change in the subsisting relation of landlord and tenant between the appellee and the appellant. The change, however, would not necessarily have involved the termination of the relation, but only a modification, since the lease, by providing that the first floor was to be used by the appellant as a restaurant and dining room, and that the upper floors were to be used for apartments or for hotel purposes, divided the premises into two separate parts and limited how the tenant should enjoy each part. Consequently, the sale of the restaurant to the landlord merely would have affected the possession of the first floor by the tenant, and would have destroyed only his ability to comply with his covenant as to its prescribed use, but the sale would in no manner have interfered with either the possession and use by the appellant of the remaining portion of the premises, or the performance of his covenant that the upper floors of the building should be used for apartments or for hotel purposes. Thus it follows from the terms of the two paper writings, when considered with respect to the situation and relation of the parties, as disclosed by the terms of the lease, that the contract for the sale of the restaurant business did not involve a termination of the original letting through a total merger in the appellee as the owner of the reversion, but only that, by reason of the tenant's implied agreement to surrender his leasehold interest in that part of the premises let for a restaurant, there was a merger of only that portion of the leased premises with the reversion; so that the tenancy would still continue as to the

remaining portion of the premises, with the future rent apportionable between the tenant and the landlord by the extinguishment of the rent in an amount equal to the proportionate rental value of the part of the premises so to be surrendered. *Ehrman v. Mayer,* 57 Md. 612, 622; *Tiffany, Landlord & Tenant,* sec. 175, par. d, secs. 12, 176; *Taylor, Landlord & Tenant,* secs. 385, 517, 443. The apportionment of this rent could not be made separately either by the landlord or by the tenant, but would have to be done through the concurrence of both; and, since it does not appear, from what the parties have done or participated in, that it must be presumed to have been the clear intention of the parties that all the tenant's previous estate should cease with the consummation of the sale of the business, the omission by the parties of such material and essential terms as their agreement with respect (a) to the remaining leasehold property, (b) to the amount of the apportioned rental, (c) and to when its payment was to begin, made the contract incomplete and uncertain, and so not to be specifically enforced. The chancellor cannot supply the necessary stipulations, which the parties had themselves failed to embody, either expressly or by necessary implication, in their written contract, since the omitted terms, if thus interpolated, would then reflect the judgment of the chancellor instead of the agreement of the parties. It is an elementary principle in specific performance that a contract will not be enforced if incomplete or uncertain in material terms. *Miller's Equity Proc.,* secs. 683, 684; *Wallingsford v. Wallingsford,* 6 H. & J. 485, 490; *Schwanebeck v. Smith,* 77 Md. 314, 319, 321; *Pomeroy's Specific Performance of Contracts* (3rd Ed.), secs. 145, 154; *Pomeroy's Eq. Juris.,* sec. 2186; *Fry on Specific Performance* (6th Ed.), secs. 336, 368-378; *Pray v. Clark,* 113 Mass. 283, 285; *Brummel v. Realty Co.,* 146 Md. 56, 66; *Phoenix Pad Manfg. Co. v. Roth,* 127 Md. 540, 543-545. See section 3 of Statute of Frauds; 2 *Coe's Alexander's British Statutes,* pp. 689, 690, 708; *Lamott v. Gist,* 2 H. & G. 433; *Lamar v. McNamee,* 10 G. & J. 124; *Browne on Statute of Frauds,*

secs. 8, 42-48, as to the necessity for an executory agreement to surrender a leasehold interest in land to be in writing.

Since the application of this principle will prevent the specific enforcement of the contract in the case at bar, it is unnecessary to consider the other grounds relied upon in support of the chancellor's decree.

*Decree affirmed, with costs.*