LEON L. GIBBS *v.* GEORGE L. MEREDITH, ET AL.

[No. 54, October Term, 1946.]

*Decided February 6, 1947 .*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Ralph S. Sachs* for the appellant.

*Jerrold V. Powers* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree, on demurrer to a
bill for specific performance of a contract of sale of
real estate, sustaining the demurrer and dismissing the
bill. The bill was filed by the purchaser against the
vendors. The demurrer was sustained on the ground
that "the contract is too vague and indefinite to be en-
forced and no amendment of the bill could remedy this
defect."

The contract was prepared on a printed form of
"sales contract—Maryland" supplied by a Washington
printer, said by plaintiff at the argument to have been
"drafted over a long period of time, with many changes
from time to time," and to have been filled in by defend-
ants' agent. On its face the form was prepared for real
estate brokers. Whatever the merits or demerits of

the printed form, in this instance it was not filled in very carefully. The contract, dated January 16, 1946, was signed by plaintiff's agent and "accepted" and countersigned by plaintiff and defendants as their "contract." It acknowledges receipt from plaintiff of a "deposit" of $500, "to be applied as part payment of the purchase" of specified property at Landover Hills, Md., "upon the following terms of sale:

"Total price of property *Eight Thousand Four Hundred* . . . Dollars (*$8400.00*).

"The purchaser agrees to pay *Three Thousand Four Hundred* . . . Dollars (*$3400.00*) cash at the date of conveyance, of which sum this deposit shall be a part.

"The purchaser is to [assume, give,] place, [take] title subject to, a first deed of trust secured on the premises of *same as above Five Thousand and 00/100* . . . Dollars (*$5,000.*) due *Monthly*, 1946, bearing interest at the rate of 5 per cent per annum, payable————.

"The balance, of deferred purchase money is to be secured by a XXXXXXXX deed of trust on said property, to be paid in monthly installments of XXXXXXXX Dollars ($XXXXX) or more, including interest at the rate of XXXX per cent per annum, each installment when so paid to be applied, first to the payment of interest on the amount of principal remaining unpaid and the balance thereof credited to principal.

\*   \*   \*   \*   \*   \*

"Within *day of settlement* days from the date of acceptance hereof by the owner, or as soon thereafter as a report on the title can be secured if promptly ordered, the seller and purchaser are required and agree to make full settlement in accordance with the terms hereof." \* \* \* (Printed words stricken out shown in brackets, and matter filled in italicized.)

The full "terms of sale" in the printed form cover a familiar method of finance, which was effective in stimulating real estate "booms" before 1929 and in impoverishing "developers" after the booms collapsed. The purchase money was provided for in three unequal

parts, (1) cash, in an amount inadequate to make the balance secure, (2) a first mortgage (*e.g.*, to a savings bank or insurance company), believed to be adequately secured, which furnished additional cash for the vendor, and (3) a junior purchase-money mortgage for the balance, which was not adequately secured. This printed form contains a separate paragraph for each of these three elements. *Supra.* If the purchaser "assumes" or "takes title subject to" such a first mortgage, the vendor in effect receives the amount of the mortgage. If the purchaser "gives" or "places" such a mortgage to a third person, it is not in terms stated that the proceeds shall be paid to the vendor, but this is clearly implied when the sum of items (1), (2) and (3) is the amount of the "total price of property." If the terms are part cash with a purchase-money mortgage for the entire balance, the second paragraph should be stricken out and the third filled in—or the third might be stricken out and the second filled in as a mortgage to be given to the vendor. If the terms are all cash, the second and third paragraphs should be stricken out, since the vendor is not then interested in where the purchaser gets the money.

In the instant case we think the terms are all cash, but plaintiff expected to obtain part of the money by "placing" a mortgage on the property. The draftsman of the contract stated this irrelevant fact by filling in the second paragraph for $5,000 and the first for $3,400 (leaving the third blank), instead of filling in the first for $8,400. Filling in the second paragraph was unnecessary but innocuous. Perhaps "give" a mortgage might suggest giving it to the vendors, but "place" a mortgage normally means merely to obtain a loan on mortgage. This is the meaning of the second paragraph when the third is filled in; we think it has the same meaning when the third is left blank. It is, therefore, immaterial whether a contract to "give" the vendors a mortgage for $5,000, "due monthly, 1946," bearing interest at 5 per cent per annum, would be too indefinite to enforce; we do not mean to suggest that it would be.

The lower court held the contract unenforceable because of indefiniteness of the terms of payment, viz., that under the contract plaintiff, having paid $3,400 and "placed" a $5,000 first mortgage, is "at liberty to pay the proceeds to the vendors or use them for any other purpose." For reasons already stated, we think this is not the true construction of the contract. The proceeds of the $5,000 mortgage, plus the $3,400, amount to the full purchase price. If the proceeds are not to be paid to the vendors, then there is no provision at all for payment of the purchase price and the purchaser pays nothing but receives $1,600 from the mortgage. If the proceeds are to be paid to the vendors, then the purchase price is to be paid in full and the paragraph in question, the one preceding and the one following (left blank) all bear a consistent relation to one subject, payment of the purchase price. If the words of the contract were susceptible of two constructions, one of which would produce an absurd result and the other would carry out the purpose of the contract, the latter construction should be adopted. To be specifically enforced, a contract must be definite and certain in all its terms and free from all ambiguity—but need not be worded with logical precision or in grammatical and rhetorical construction. *Trotter v. Lewis*, 185 Md. 528, 45 A. 2d 329, 332.

The lower court cited *Bond v. Weller*, 141 Md. 8, 118 A. 142, and *Tarses v. Miller Fruit & Produce Co.*, 155 Md. 448, 142 A. 522, in which contracts were held too indefinite to be specifically enforced. In *Bond v. Weller* the contract, after stating the purchase price and specifying that it was to be paid in certain instalments, provided that "A building association loan" was to be "secured" by the vendee and the balance was to be "carried" by the vendor "on a second mortgage with interest." The court said this was "a distinct undertaking on the part of the vendee to pay part of the purchase money by a loan to be obtained by him from a building association, and a like undertaking on the part of the vendor to accept a second mortgage." 141 Md. 11, 118 A. 143. The

contract was held indefinite and uncertain only because it failed to state the respective amounts of the building association mortgage and the second mortgage. In *Tarses v. Miller Fruit & Produce Co.* the contract provided: "Vendor agrees to take back a second mortgage of one thousand ($1,000.00) dollars for one year," to bear interest at 6%, payable quarterly, "at and for the price of ninety-two hundred dollars ($9,200.00)", of which $500 had been paid and the balance was to be paid, "Cash within sixty (60) days." The contract was held uncertain in failing to indicate (1) the property on which the second mortgage was to be given, *i.e.*, whether the property purchased or other property, and (2) if the former, the amount of the first mortgage, *i.e.*, whether limited to the balance of the purchase money ($7,700). Moreover, the decision was based not only on indefiniteness but also on long delay in seeking enforcement. In the instant case the contract leaves no uncertainty as to the amount of the mortgage or the property to be subject to it—though both are irrelevant, since the sale is a cash sale.

*Decree reversed, with costs, and case remanded.*