STANDARD AMERICAN HOMES, INC. *v.*
PASADENA BUILDING COMPANY

[No. 110, September Term, 1958.]

*Decided January 22, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Malcolm B. Smith,* with whom was *Marvin I. Anderson* on the brief, for the appellant.

*J. Calvin Carney* for the appellee.

HORNEY, J., delivered the opinion of the Court.

Standard American Homes, Inc., (Standard Homes or the builder) filed a bill in the Circuit Court for Anne Arundel County against the Pasadena Building Company (Pasadena Company or the owner) seeking the specific performance of an agreement for the sale of real estate. The chancellor sustained a demurrer to the bill without leave to amend, and Standard Homes appealed.

On January 7, 1957, the parties, having recited that the Pasadena Company was the owner of two tracts of land, one on the Ritchie Highway in Pasadena consisting of approximately forty acres of land known as Dudley Acres, and the other on Forest Avenue in Dorsey divided into seventeen lots known as Lennox Park; that Standard Homes had completed certain engineering and subdivision work on both

tracts and had had the tracts "site approved" by the Veterans' Administration; and that Standard Homes desired to purchase the lots in both tracts for the purpose of development in the normal course of its business as a builder and developer, entered into an agreement of sale wherein, in consideration of $500 paid by Standard Homes to the Pasadena Company, the latter agreed substantially as follows:

1—To grant and convey unto the builder "all the good marketable residential lots" in Dudley Acres for $850 each and in Lennox Park for $800 each, as shown on attached plats.

2—To release to the builder the first six lots in each development without payment of the purchase price and take in lieu thereof such purchase money mortgage as will "allow the builder to obtain a construction mortgage."

3—To release all subsequent lots upon the payment of $500 and take a mortgage for the balance of the purchase price "similar to the above described mortgage."

4—To install at the expense of the owner "a hardtop road from the Ritchie Highway to the rear of the commercial area of Dudley Acres * * * when or before" the builder has erected a sample house.

5—To execute all papers which may be required for the builder to meet the requirements of the county or the Veterans' Administration.

There were other covenants and agreements on the part of the builder which have no particular bearing on this controversy other than as is hereinafter referred to.

Among other things, after reciting the ownership of Dudley Acres and Lennox Park by the Pasadena Company and the execution of the agreement, the bill alleged in effect that the builder had complied as far as it could go with the terms of the agreement. It was also specially asserted that certain of the lots had been conveyed to it "by way of part performance," that it had proceeded to promote and develop for sale —pending construction of dwellings—all of the lots in Dudley Acres, and that it had expended much time, effort and

money in connection with the performance of the agreement by conducting engineering studies, obtaining commitments for financing and complying with county, state and federal regulations.

The bill further alleged that the owner had failed to comply with that part of the agreement requiring the execution of all papers and documents necessary to comply with the county ordinance and regulations pertaining to subdivisions, and that the owner had refused to comply with the terms of the agreement and "other promises therein contained," thereby precluding the builder from proceeding with its development and construction plans. Standard Homes also claimed that it had suffered, and would continue to suffer, monetary loss and damage, and asserted that it was able and willing to continue to perform its part of the agreement.

In addition to the reasons formerly assigned for demurring before the adoption of the Maryland Rules, the demurrer, as Rules 373 and 345 require, states in detail the questions of law or insufficiency of substance upon which the demurrer is founded.

Neither the plat of Dudley Acres, referred to in the agreement and in the bill as being attached to the agreement, nor the recorded plat of Dudley Acres, referred to in the bill as being attached to the bill, was made a part of the appellant's [Standard Homes'] appendix, but both were appended to the appellee's [Pasadena Company's] brief. Apparently the plat of Lennox Park, referred to in the agreement as being attached thereto, was not so attached to either the agreement or the bill. Nor is it included in the transcript of record. Because the appellant failed to comply with Maryland Rule 828 c 2, requiring delivery to the appellee of a written statement of the parts of the record the appellant proposed to include in the printed extract, and particularly because the plats therein referred to were not made a part of the appellant's appendix, the appellee moved to dismiss this appeal. However, since the appellee filed copies of the plats with his brief and it does not appear he was prejudiced, we shall overrule the motion and assess the costs thereof to the appellant regardless of the outcome of this appeal. *Klein v. Dougherty*,

200 Md. 22, 87 A. 2d 821 (1952). See also Maryland Rule 828 i.

At the argument on the demurrer counsel agreed that the phrase "all the good marketable residential lots" referred to whether the lots could be sold and not to the title. It was also conceded that the relocation of the proposed hardtop road, as it originally appeared on the recorded plat filed with the bill, to conform with the location of the road, as it is delineated on the plat attached to the agreement of sale, resulted in a major change in the shape and location of some of the lots. The chancellor—(1) because he was unable to determine whether a lot was saleable as a residential lot, (2) because the relocation of the road was a departure not contemplated by the terms of the agreement, (3) because the agreement did not state the length of time the mortgage was to run, or how it was to be repaid, or the rate of the interest thereon, and (4) because Standard Homes had an adequate remedy at law—sustained the demurrer and dismissed the bill.

Standard Homes contends that the chancellor should have afforded it an opportunity to avoid questions of vagueness and uncertainty and to explain any ambiguity in the agreement by extraneous evidence; that in lieu of dismissal because the agreement was not specifically enforceable, the chancellor should have granted other relief; and that the action of the chancellor in sustaining the demurrer and dismissing the bill without leave to amend constituted an abuse of judicial discretion. The Pasadena Company countered by claiming that the agreement of sale was vague and uncertain; that the change in the location of the hardtop road created another ambiguity in the terms of the agreement; and that there was an adequate remedy at law.

(i). Right to Amend. ·

The quick answer to the builder's first and third contentions is that permission to amend under the circumstances in this case was discretionary, not mandatory. Furthermore, the record shows that no petition to amend was ever filed. Indeed, it was conceded at the argument that leave to amend had not been requested. Whenever a demurrer to a bill or

other pleading is sustained, an amendment may be allowed by the court in its order sustaining the demurrer without the necessity of a motion or petition therefor, but whether an amendment shall be allowed is always within the sound discretion of the court. Maryland Rule 320 d 1 (e). However, if seasonable application is made therefor, a court will ordinarily grant leave to amend at any time before a final order is entered so that a case may be tried on its merits. Rule 320 a 1, 320 c 1, 320 d 1 (b). Since Standard Homes failed to comply with the available rules to effect an appropriate amendment, it would serve no purpose to consider here what it could have shown had it been afforded an opportunity to present evidence with respect to what constituted a saleable residential lot, the alleged part performance of the agreement and the conceded relocation of the hardtop road. On the demurrer, the chancellor could consider only such facts as had then been properly pleaded. It was those facts, which the demurrer admitted, and no other, that were challenged as to their legal sufficiency to constitute a cause of action. See *Furman v. Lanahan,* 159 Md. 1, 149 A. 465 (1930).

(ii). Enforceability of Agreement.

We think the chancellor was clearly right when he sustained the demurrer because the agreement of sale was so vague and uncertain that it could not be specifically enforced. That an agreement for the sale of real estate must be definite and certain by its terms, and free from all ambiguity, has been decided by this Court time and time again. See *Globe Home Impvt. Co. v. Brothers,* 204 Md. 73, 102 A. 2d 748 (1954); *Shriver v. Seiss,* 49 Md. 384 (1878). Cf. *Trotter v. Lewis,* 185 Md. 528, 45 A. 2d 329 (1946).

It is apparent—indeed the builder concedes—that the agreement sought to be specifically enforced in this case is a good example of *how not to draw* contracts for the sale of real estate where the terms and provisions to be expressed therein are other than those usually found in a good printed form. In fact the instrument the chancellor was asked to enforce appears to be no more than an informal "working" agreement intended for temporary use. This fact is clearly demonstrated by the omission from the agreement of any posi-

tive reference to a time for performance. At one point it is recited that the development is to proceed "in the course of [the] normal business as builder and developer," whatever that may mean. At another point, there was no reference to time other than the builder was "to proceed with *haste and diligence* in whatever processes * * * may be required to *start* the development known as Dudley Acres." (Emphasis supplied). That the "normal course of business" may have meant a long time is suggested by the statement in the last paragraph of the agreement to the effect that "Lennox Park is to be developed at a *later* date." (Emphasis supplied).

Specifically, the term "good and marketable residential lots," even though it applied to saleability and not to title, is still vague, uncertain and ambiguous. To determine which lots were saleable and which were not would have required the chancellor to formulate a method of making that determination, and this he was without authority to do. *Brown v. Summerfield,* 153 Md. 356, 138 A. 242 (1927); *Snodgrass v. Stubbs,* 189 Md. 28, 54 A. 2d 338 (1947).

The terms of the agreement relating to the purchase money mortgage are also vague and uncertain. An agreement of sale which provides for the execution of a mortgage in lieu of a part or all of the purchase money paid for a building lot and states that the mortgage shall "be placed in such a manner as would allow the builder to obtain a construction mortgage for the erection of [a] house on [the] lot," without more, is not specifically enforceable. In this instance none of the terms usually specified—time, mode and terms of payment, including rate of interest—are even mentioned. In *Smith v. Biddle,* 188 Md. 315, 52 A. 2d 473 (1947), it was held that a contract which did not state how long a mortgage was to run or what rate of interest it was to draw was not enforceable. In *Applestein v. Royal Realty Corp.,* 180 Md. 274, 23 A. 2d 684 (1942), the contract was held unenforceable on demurrer because the maturity date was ambiguous. Cf. *Caplan v. Buckner,* 123 Md. 590, 91 A. 481 (1914). See also *Moore v. Modern Improvement Ass'n,* 190 Md. 39, 57 A. 2d 316 (1948); *Gibbs v. Meredith,* 187 Md. 566, 51 A. 2d 77 (1947); *Bond v. Weller,* 141 Md. 8, 118 A. 142 (1922);

*Tarses v. Miller Fruit & Produce Co.,* 155 Md. 448, 142 A. 522 (1928); *Realty Improvement Co. v. Unger,* 141 Md. 658, 119 A. 450 (1922). Also cf. *Harris v. Kirshner,* 194 Md. 139, 70 A. 2d 47 (1949).

Finally, there is little doubt that the alteration with a pencil of one of the plats to make it conform to the other plat produced such a state of ambiguity as to also render the agreement unenforceable. A determination of what was meant to be accomplished by the alteration could not be left to future settlement. Moreover, the resulting change in the location and size of some of the lots was clearly a departure from the terms of the agreement and also made it too indefinite to be specifically enforced. See *Beck v. Bernstein,* 198 Md. 244, 81 A. 2d 608 (1951).

(iii). Other Relief in Lieu of Performance.

Whether the chancellor should have heard the case on its merits and granted some other form of relief under the general prayer in lieu of dismissal because the agreement was not specifically enforceable, has been complicated considerably by an allegation in the bill. While it did not specifically claim damages therefor—either in the alternative or otherwise—the builder alleged in the seventh paragraph of the bill, as one of the reasons why it was entitled to specific performance, that it had "suffered monetary loss and damage, and [would] continue to suffer monetary loss, in that it [had] entered into various agreements * * * in connection with its plans for development, * * * that by reason of * * * delay, the [builder was] losing the normal return * * * [on] capital investments already made, and * * * [that the builder was] suffering other losses by reasons of the [owner's refusal to perform the agreement]."

If the builder had not indicated that it was claiming monetary damages in addition to the relief "by way of compensation to the extent of money actually paid under the alleged contract, and the value of beneficial and lasting improvements [Miller, *op. cit., supra,* § 672]," we would have no difficulty in deciding that the chancellor should have retained the bill—under the precedent established by *Green v. Drummond,* 31

Md. 71 (1869), and subsequent cases such as *Girault v. Adams*, 61 Md. 1 (1883); *Chamberlain v. Preston*, 170 Md. 1, 182 A. 579 (1936); *Wiley v. Wiley*, 115 Md. 646, 81 A. 180 (1911); and *Boehm v. Boehm*, 182 Md. 254, 34 A. 2d 447 (1943) [1]—for the purpose of decreeing repayment of the initial $500 deposit and the cancellation of the deed and purchase money mortgage, which were apparently executed on the faith of the unenforceable agreement.

Or, if the builder had joined its claim against the owner for monetary damages, (other than its claim for a refund on the initial deposit), with its claim for specific performance either as an independent or an alternative claim, which it clearly had a right to do under the provisions of Maryland Rule 313 a, we also would have no difficulty in deciding that the chancellor should have retained the bill for the purpose of hearing and determining the merits of all of the issues posed by the pleadings. See *Moore v. McAllister*, 216 Md. 497, 141 A. 2d 176 (1958). See also *Ward v. Newbold*, 115 Md. 689, 81 A. 793 (1911).

Under the circumstances in this case, since it is apparent that the builder may claim damages other than those it could have been allowed in this proceeding but for the intimation that it had other claims for damages not yet sued for, we think we should affirm the order of the chancellor in its entirety and afford the builder an opportunity to seek its remedy, if any, in an action at law.

> *Order affirmed, the appellant to*
> *pay the costs.*

---

1. Cf. *Ward v. Newbold, infra,* and *Davis v. Winter*, 168 Md. 613, 178 A. 604 (1935).