CORCORAN *v.* THE BALLINADEE FARM COMPANY

[No. 292, September Term, 1963.]

580

*Decided May 6, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*F. Murray Callahan* and *R. Edwin Brown* for the appellant.

*Vivian V. Simpson,* with whom were *Joseph B. Simpson, Jr., H. Algire McFaul, Harry W. Lerch* and *Simpson & Simpson* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

Thomas F. Corcoran in this appeal asks us to reverse an order of the Circuit Court for Montgomery County sustaining a demurrer to his bill of complaint without leave to amend. Appellant sought in his bill filed March 21, 1963 (1) to set aside and cancel a contract between the parties dated July 1, 1954; (2) to require the corporate appellee, The Ballinadee Farm Company, to deliver certain stock to appellant; (3) to require an accounting of the corporation's transactions since July 1, 1954 and then a decree for the payment of any money found

due him; and (4) to restrain and enjoin the appellee from selling or assigning any interest in any of its property. The chancellor was of the opinion that the bill of complaint did not state a cause of action, but that even if it did the suit was barred by the doctrine of laches.

The essential allegations of the bill, taken as true of course for the purposes of ruling on the demurrer thereto, are as follows. The appellant "took title" to a three hundred twenty-eight and one-half acre farm in Montgomery County in 1946 known as "Ballinadee". He moved onto the farm and the following year began to conduct a commercial farming operation that included raising crops, purchasing and raising livestock, and the purchase and breeding of thoroughbred horses for sale. Edward J. Flynn, whose name is found throughout the bill, was a practicing attorney in New York, approximately twice Corcoran's age. Known to appellant since he was twenty years of age, Flynn had shown a fatherly interest and affection toward him, which feelings were reciprocated, appellant respecting Flynn's age, superior professional and business astuteness and placing considerable confidence in him.

In 1948, at Flynn's suggestion, the appellee corporation was formed, with one thousand shares of authorized stock, for the purpose of purchasing the farm and operating it commercially. In consideration of conveying the farm and certain personalty to the corporation, Corcoran received two hundred and fifty of the one thousand shares outstanding, $10,000 in cash, and three promissory notes of the corporation in the amount of $10,000 each. The remaining seven hundred fifty shares were divided among Flynn and his three children. From the inception of the corporation Corcoran was its secretary-treasurer, and he resided on the Ballinadee farm, operating it for the benefit of the corporation and expending several thousand dollars of his own in the corporation's business.

In 1950 the appellant acquired another farm in Montgomery County consisting of about four hundred and twelve acres known as the Jarboe farm. That same year he conveyed this farm to Flynn allegedly without consideration, and the property passed to his widow when Flynn died in 1953. She in turn conveyed it to appellee in 1957.

The bill further alleges that in 1951 appellant purchased in his own name a herd of livestock. He subsequently transferred the livestock to the appellee without consideration to be held in trust by it for the benefit and use of the appellant. Then, in July of 1954, on the initiation of one Monroe Goldwater who had been Mr. Flynn's law partner, who acted as attorney for Flynn's executor, and who had been well known to appellant for many years, the agreement upon which this litigation centers was entered into between Corcoran and the corporation. It provided for acquisition by the corporation of appellant's two hundred and fifty shares of its stock and acknowledgment of the payment and acquittance of the indebtedness of $10,000 then owed by the appellee corporation to appellant. The consideration appellant received was certain livestock, which he now alleges already belonged to him. Subsequent to this 1954 agreement the corporation sold Ballinadee for approximately $84,000.

The bill charges that the agreement was invalid for reasons of fraud, mistake, failure of consideration, lack of mutuality, and breach of a confidential relationship which allegedly existed between the appellant and the present officers and stockholders of the corporation.

The appellee demurred to the whole and each and every paragraph of the bill of complaint. We think the chancellor was correct in sustaining the demurrer on the ground of the insufficiency of the bill to state a cause of action. While a detailed discussion of the lengthy bill of complaint would serve no useful purpose, the following are typical examples of its insufficiency. Though appellant sought an accounting, details concerning his ownership of Ballinadee farm are quite sparse. He stated that he purchased the farm together with Mr. Flynn but fails to disclose what part of the purchase price, if any, he himself contributed. The bill alleged that the 1948 agreement (filed with the bill as an exhibit) for the conveyance of Ballinadee to the corporation sustained appellant's claim that two hundred and fifty shares of stock in the corporation were issued to him as part of the consideration, yet the agreement makes no reference to any such stock. Paragraph 6 averred that the appellant "negotiated" the purchase of Jarboe farm and

that he "secured a commitment for a mortgage loan thereon." However, the bill did not allege the amount of the appellant's own money paid nor does it allege he paid any of his own money when he acquired title thereto, or that he executed a mortgage. Paragraph 7 alleged that appellant, as the secretary-treasurer of the corporation expended large sums of his own money for corporate benefit, but there were set forth no facts to explain what the purposes of the expenditures were, or why or when they were made. An undated personal letter addressed to Mr. Flynn's widow was characterized in the bill of complaint as a demand in writing upon the officers and stockholders of the corporation for the return of the two hundred and fifty shares which appellant stated they have refused to honor as a demand. His explanation to Mrs. Flynn for having entered into the July 1954 agreement in which he received the livestock in exchange for corporate stock was that he thought it was prepared solely for the purpose of expediting settlement of Mr. Flynn's estate. Moreover, the general and conclusional allegations of fraud and breach of a confidential relationship simply were not supported by the facts set forth in the bill.

We think the chancellor did not err in sustaining the demurrer without leave to amend. At the oral argument there was some discussion concerning the right to amend the bill of complaint. The docket entries show there was ample time and opportunity after argument on the demurrer to ask leave to amend before the chancellor's order was filed. See *Standard Homes v. Pasadena Co.*, 218 Md. 619, 624, 147 A. 2d 729. Appellant's counsel at the argument in this Court could not suggest what additional allegations or statements of fact might cure the insufficiency of the bill as it stands, but merely intimated that this Court should suggest amendments. This would be a clearly inappropriate advisory function even if we were aware of the facts and circumstances surrounding the transactions between the parties. Nothing said at the argument indicates to us that the bill could be cured by amendment—unless by virtually setting up some new and different case. *Clarke v. Brunk*, 189 Md. 353, 362, 55 A. 2d 919.

Since we take the view that the bill of complaint failed to

state a cause of action and further that the chancellor's refusal to permit amendments thereto was not in error we find it unnecessary to consider whether the doctrine of laches was applicable.

*Order affirmed, with costs.*